In re WORLDCOM, INC. SECURITIES
LITIGATION

California Public Employees' Retirement SYSTEM and the Los Angeles County Employees Retirement Association, Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Board of Trustees of The Teachers' Retirement System of The State of Illinois, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

State Universities Retirement System of Illinois, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Illinois State Board of Investment, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

West Virginia Investment Management Board, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

United Food and Commercial Workers Union Local 880–Retail Food Employers Joint Pension Fund, et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Alameda County Employees' Retirement Association, et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Screen Actors Guild–Producers Pension and Health Plans, et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Washington State Investment Board, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Minnesota State Board of Investments, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Montana Board of Investments, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Los Angeles Board of Fire & Police Pension Commissioners, et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

The Maryland–National Capital Park and Planning Commission Employees' Retirement System, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Heavy & General Laborers' Locals 472 & 172 Pension & Annuity Funds, Teamsters Local 408 Pension Fund and Teamsters Local 863 Guaranteed Fund, Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

State of Wisconsin Investment Board and Milwaukee Employees' Retirement System, Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Maintenance Employees Teamsters Local 416 Pension Fund, et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Maine State Retirement
System, Plaintiff,

v.

Citigroup, Inc., et al., Defendants.

Municipal Employees' Retirement
System of Michigan, et al.,
Plaintiffs

v.

Bernard J. Ebbers, et al., Defendants.

State of Alaska Dept. of Revenue and
Alaska State Pension Investment
Board, Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

McMorgan & Company, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Carpenters Pension Trust for Southern
California, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Alaska Electrical Pension
Fund, Plaintiff,

v.

Citigroup, Inc., et al., Defendants.

UFCW International Union–Industry
Pension Fund, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Massachusetts State Guaranteed
Annuity Fund, et al.,
Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Alaska Permanent Capital
Management Company,
Plaintiff,

v.

Citigroup, Inc., et al., Defendants.

Denver Area Meat Cutters &
Employers Pension Plan,
et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Locals 302 and 612 of The International
Union of Operating Engineers–Em-
ployers Construction Industry Retire-
ment Trust, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Alaska Teamster–Employer Pension
Trust, Plaintiff,

v.

Citigroup, Inc., et al., Defendants.

District No. 9, I.A. of M & A.W.
Pension Trust, et al.,
Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

The National Asbestos Workers
Pension Fund, Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

American International Group,
Inc., et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

The Northwestern Mutual Life
Insurance Company,
Plaintiff,

v.

Bernard J. Ebbers, et al., Defendants.

Nos. 02 Civ. 3288(DLC), 03 Civ. 0167, 03
Civ. 0168, 03 Civ. 0169, 03 Civ. 0170, 03
Civ. 0171, 03 Civ. 0337, 03 Civ. 0890, 03
Civ. 0891, 03 Civ. 0892, 03 Civ. 1283, 03
Civ. 1284, 03 Civ. 2839, 03 Civ. 3859, 03

Civ. 3860, 03 Civ. 4499, 03 Civ. 4500, 03 Civ. 6226, 03 Civ. 6227, 03 Civ. 6592, 03 Civ. 7297, 03 Civ. 7806, 03 Civ. 8269, 03 Civ. 8270, 03 Civ. 8271, 03 Civ. 8923, 03 Civ. 8924, 03 Civ. 9168, 03 Civ. 9400, 03 Civ. 9401, 03 Civ. 9402, 03 Civ. 9823, 03 Civ. 9824.

United States District Court,
S.D. New York.

Jan. 20, 2004.

William S. Lerach, Darren J. Robbins, Spencer Burkholz, Michael J. Dowd, Randall Baron, Thomas E. Egler, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Melvyn I. Weiss, Steven G. Schulman, Sol Schreiber, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Patrick J. Coughlin, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for Plaintiffs.

William S. Lerach, Darren J. Robbins, Spencer Burkholz, Michael J. Dowd, Randall Baron, Thomas E. Egler, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Melvyn I. Weiss, Steven G. Schulman, Sol Schreiber, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Patrick J. Coughlin, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Gregg D. Renkes, Attorney General, Michael A. Barnhill, Assistant Attorney General, State of Alaska, Juneau, AK, for Plaintiffs State of Alaska Dept. of

Revenue and Alaska State Pension Investment Board.

David Wertheimer, Lyndon Tretter, Hogan & Hartson, New York City, for Defendant Bernard J. Ebbers.

R. David Kaufman, M. Patrick McDowell, Brunini Grantham Grower & Hewes PLLC, Jackson, MS, for Defendant Bernard J. Ebbers, of counsel.

Eliot Lauer, Michael Moscato, Michael Hanin, Curtis, Mallet–Prevost, Colt & Mosle LLP, New York City, for Defendant Arthur Anderson LLP.

Paul Curnin, David Elbaum, Simpson Thacher & Bartlett LLP, New York City, for Director Defendants.

Jay B. Kasner, Susan L. Saltzstein, Steven J. Kolleeny, Skadden Arps Slate Meagher & Flom LLP, New York City, for Underwriter Defendants.

Martin London, Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Walter Rieman, Marc Falcone, Joyce S. Huang, Paul Weiss Rifkind Wharton & Garrison LLP, New York City, Robert McCaw, Peter K. Vigeland, Wilmer Cutler & Pickering, New York City, for Defendants Citigroup Global Markets, Inc. f/k/a Salomon Smith Barney, Inc., Citigroup Inc., and Jack Grubman.

## OPINION AND ORDER

COTE, District Judge.

This Document Relates to:

On November 21, 2003, the motion to dismiss one of the individual actions filed by the law firm Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") in the litigation arising from the collapse of WorldCom, Inc. ("WorldCom") was granted in part. *In re Worldcom, Inc. Securities Litig.*, 294 F.Supp.2d 431 (S.D.N.Y. 2003) ("November 21 Opinion"). The November 21 Opinion dismissed several claims on the ground that the statute of limitations provision within the Securities Act of 1933 ("Securities Act") applied to, and barred, the Securities Act claims brought in that action. In addition, the November 21 Opinion dismissed the Securities Act Section 12(a)(2) claim based on a December 2000 private placement of WorldCom debt for failure to state a claim.

Based on the rulings in the November 21 Opinion, defendants have now moved to dismiss claims in thirty-six other individual WorldCom actions ("Individual Actions"), including nine such actions in their entirety. The plaintiffs in the action subject to the November 21 Opinion have also moved for reconsideration of that opinion. This Opinion addresses the motion for reconsideration of the November 21 Opinion and the motions to dismiss insofar as those motions are addressed to thirty-one Individual Actions filed by Milberg Weiss ("Milberg Weiss Actions"). Familiarity with the November 21 Opinion is assumed. For the following reasons, the motion for reconsideration is denied and the motions to dismiss are granted.

### Background

On June 25, 2002, WorldCom announced that it would undertake a massive restatement of its financial statements. Within weeks, it filed the largest bankruptcy in United States history. The private civil litigation arising from WorldCom's implosion has largely been transferred to this Court by the Judicial Panel on Multi–District Litigation ("MDL Panel").

The class actions alleging WorldCom claims began to be filed in this district on April 30, 2002. They were consolidated by an Order of August 15, 2002.

Meanwhile, numerous actions alleging individual, as opposed to class, claims were filed in venues across the country. Many were filed by Milberg Weiss. Each of the Milberg Weiss Actions was filed in a state court and removed to federal court as "related to" the WorldCom bankruptcy. The complaints in the Milberg Weiss Actions

had been drafted to avoid the removal and class action provisions of the federal securities laws. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 21219037, at *1 (S.D.N.Y. May 22, 2003). As a consequence, those complaints did not include any class action claims or claims brought under the Securities Exchange Act of 1934 ("Exchange Act"); inclusion of either type of claim would have provided independent bases for removal of the action to federal court. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 315 (S.D.N.Y.2003). Instead, the Milberg Weiss Actions pleaded solely claims brought pursuant to the Securities Act, principally Sections 11 and 12(a)(2) claims, based on alleged misrepresentations made in connection with WorldCom bond offerings. There is concurrent jurisdiction in state and federal courts for Securities Act claims. *Id.* at 325. A few of the Milberg Weiss Actions were remanded to state court before their transfer to this Court by the MDL Panel, but most have been transferred to this Court.

Milberg Weiss has described its reasons for the tactical pleading decision to eschew Exchange Act claims as follows. It asserts that it has "developed a strategy which we believe will maximize the recovery of our clients' damages resulting from the collapse of the WorldCom bonds." Milberg Weiss relied on Sections 11 and 12(a)(2) claims because they "are uniquely strong claims," since they provide "for non-fraud liability as to the signers of the registration statement, the underwriters of the securities and the accountants who certified the financial statements." These individuals "are *prima facie* liable for any

false statements." These claims are "an extremely strong remedy since fraud need not be alleged and [they are] not subject to any of the enhanced pleading burdens attached to fraud claims. By contrast, the common stock claims asserted in the [WorldCom] class action are all fraud claims, subject to a much higher scienter proof requirement." Milberg Weiss identified additional alleged advantages in pleading solely Securities Act claims as the fact that a "plaintiff need not prove causation of damages" and the fact that such claims may be "brought in state court." Milberg Weiss identified the underwriters of WorldCom's bond offerings, who are named as defendants in the Securities Act claims, as "the most likely source of any recovery," since other potential defendants have limited resources. With these and other arguments it urged its clients not to join the WorldCom class action, but instead to file their own individual actions in state court. Letter of May 23, 2003 from William S. Lerach of Milberg Weiss.[1]

By Orders dated December 23, 2002, and May 28, 2003, the Individual Actions before this Court and the securities class action were consolidated for pretrial proceedings. Through an Order of May 28, 2003, plaintiffs in Individual Actions who wished to amend their complaints were required to do so within three weeks of their action's arrival on this Court's docket.

At a conference on September 12, 2003, defense counsel gave notice of their intent to bring two separate sets of motions to dismiss claims that are common to many Individual Actions.[2] Defense counsel indi-

---

1. This letter and other documents were the subject of a hearing held on November 13, 2003 to address representations made by Milberg Weiss to members of the WorldCom class. Based on a finding that deficiencies in the written communications from Milberg Weiss to class members had resulted in confu-

sion and misunderstanding, a curative notice has been sent to every plaintiff who has filed an Individual Action. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22701241 (S.D.N.Y. Nov. 17, 2003).

2. An Opinion of May 19, 2003 largely denied the motions to dismiss the consolidated class

cated that their first set of motions would be based upon the statute of limitations bar to many claims, including their contention that *American Pipe* tolling does not apply to Individual Actions filed or amended before a decision is rendered on the motion to certify a class.[3]

At a conference of September 22, the Court proposed and the parties agreed that the defendants would initially address their motions to dismiss to one or two of the complaints in the Individual Actions. The plaintiffs in those actions would oppose them and the plaintiffs in other Individual Actions would be permitted also to file a single, joint amicus brief in opposition. An Order of September 22 provided that when a decision on the motion to dismiss was issued, the parties in the other Individual Actions in which the same legal issues arise would be given an opportunity to show cause "why the decision does not apply to those actions."

The September 22 Order set the schedule for two tranches of motions to dismiss claims common to many of the Individual Actions. The first tranche of the motions to dismiss were to address defendants' claims that there were statute of limitations bars to claims asserted in the Individual Actions and that the December 2000 private placement does not give rise to a Securities Act claim.[4] The first tranche of the motions to dismiss was filed on October 3, and was fully submitted on October 31. The November 21 Opinion addressed the motion to dismiss the complaint in 03 Civ. 6592 filed by Milberg Weiss on behalf

of two Alaska plaintiffs ("MW Alaska Action").

In brief, the November 21 Opinion ruled as follows.[5] It held that the statute of limitations contained in Section 13 ("Section 13") of the Securities Act, 15 U.S.C. § 77m, governs the Section 11 Securities Act claim in the MW Alaska Action. That limitations period is the earlier of (a) three years from the date of the initial registration statement, or (b) one year from the date on which a plaintiff is put on actual or constructive notice of the facts underlying the claim. at 439.

The November 21 Opinion rejected the plaintiffs' argument that the longer statute of limitations period in Section 804 ("Section 804") of the Sarbanes–Oxley Act of 2002 ("Sarbanes–Oxley"), 28 U.S.C. § 1658, applied to their claim, since Section 804 applies to claims of fraud and their Section 11 claim did not sound in fraud. *Id.* Section 804 provides in pertinent part that

> a private right of action that *involves a claim of fraud, deceit, manipulation, or contrivance* in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the [Exchange Act], may be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."

28 U.S.C. § 1658 (emphasis supplied).

The plaintiffs in the MW Alaska Action admitted that their claim did not sound in

---

action complaint. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 21219049 (S.D.N.Y. May 19, 2003).

**3.** The motion to certify a class was granted on October 24, 2003. *In re WorldCom, Inc. Securities Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22420467 (S.D.N.Y. Oct. 24, 2003).

**4.** The second tranche of motions addresses Securities Litigation Uniform Standards Act

of 1998("SLUSA") preemption and the liability of holding companies under Securities Act claims.

**5.** This summary is provided as background, and is not intended to alter the November 21 Opinion, which must be considered in its entirety.

fraud. They argued, however, that Section 804 should nonetheless apply because the claim arose from WorldCom's accounting manipulations and Congress' use of the term "manipulation" (as well as the term fraud) in Section 804 signified Congress' intent to extend Section 804 beyond the securities fraud statute, that is, beyond Section 10(b) of the Exchange Act. The November 21 Opinion found that the text of Section 804 parallels the text of the private causes of action for securities fraud, and uses terms not found in Section 11, which refers only to material misrepresentations or omissions. at 443. It held that Section 804 extends the time for private causes of action under the securities laws only for claims of fraud, deceit, manipulation or contrivance. *Id.* at 444. The plain language of Section 804 does not encompass Sections 11 and 12(a)(2) claims. *Id.*

Since the Section 11 claim arising from the 1998 WorldCom Bond Offering expired in August 2001, or three years after the date of the registration statement for that offering, the Section 11 claim in the MW Alaska Action addressed to that offering was dismissed as time-barred. *Id.* On the other hand, the November 21 Opinion rejected the defendants' contention that the plaintiffs in the MW Alaska Action were on inquiry notice as a matter of law as of April 20, 2002, that is, one year before the MW Alaska Action was filed, of the basis of their remaining Section 11 claims. *Id.* at 447. It found, however, that "[t]here can be no doubt that at least as of WorldCom's announcement on June 25, 2002—that it would have to restate its publicly reported financial results for 2001 and the first quarter of 2002 by $3.8 billion—plaintiffs were on inquiry notice of their Sections 11 and 12(a)(2) claims." *Id.* at 449.[6]

. The plaintiffs in the MW Alaska Action argued that the *American Pipe* tolling doctrine extended Section 13's statute of limitations. *See American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The doctrine provides that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. 756. Adopting the position taken by every other district court in this circuit that has considered the issue, the November 21 Opinion held that a plaintiff who chooses to file an action independently of the class before a determination on class certification cannot benefit from the *American Pipe* tolling rule. at 450. As a consequence, the amendment of the MW Alaska Action complaint on September 24, 2003, to add claims against additional defendants was time-barred and the claims against those additional defendants were dismissed with prejudice. *Id.* at 453. The plaintiffs in the MW Alaska Action failed to show that the omission of these defendants from the initial pleading was a mistake or could otherwise relate back to a timely pleading. *Id.* at 449.

Finally, the November 21 Opinion dismissed the Section 12(a)(2) claim arising from the December 2000 WorldCom private placement. It is undisputed that Section 12(a)(2) does not provide a cause of action for private placements. *Id.* While the plaintiffs had argued that the December 2000 private placement was in fact a public offering, and thus, within the ambit of a Section 12(a)(2) claim, the complaint in the MW Alaska Action described the transaction as a "private placement" ex-

---

**6.** The plaintiffs in the MW Alaska Action did not contend that they undertook any inquiry at any time prior to December 2002. As a

result, knowledge was imputed as of the date their duty to inquire arose. at 445.

empt from SEC registration requirements. In addition, the Offering Memorandum for the December 2000 Offering confirmed that it was a private placement. *Id.* at 454.

The November 21 Opinion also rejected the plaintiffs' request to amend their pleading to allege that the December 2000 Offering was a public offering. The proposed amendment did not include any deletion of the allegations that the December 2000 Offering was exempt from registration or that the December Offering was a private placement. *Id.* at 455 n. 37. The plaintiffs were unable to identify how the December 2000 Offering was exempt from registration requirements other than as a private placement. *Id.* The plaintiffs did not seek leave to amend any other portion of their pleading.

The November 21 Opinion dismissed with prejudice each of the following claims in the MW Alaska Action: the Section 11 claim based on the 1998 Bond Offering, and the Section 12(a)(2) claim based on the December 2000 private placement. The motions to dismiss by defendants added after June 25, 2003, were also granted with prejudice.

During a conference on November 24, the Court and the parties discussed the derivative motion practice that would be based on the November 21 Opinion. In advance of the conference, counsel for the Underwriter Defendants [7] had circulated a list of the claims in the Individual Actions that they contended were subject to dismissal based on the November 21 Opinion. A schedule was set so that each plaintiff would have an opportunity to show why the November 21 Opinion did not control the motions to dismiss that were to be brought against its complaint. Counsel for the plaintiffs in the Milberg Weiss Actions represented that, with the exception of one issue, they would not reargue any of the rulings in the November 21 Opinion, and that the issue was simply how the November 21 Opinion applied to each of the Milberg Weiss Actions.[8] He did wish to reargue, however, the decision that time-barred claims were dismissed with prejudice.[9]

On or about December 2, defendants in the Individual Actions filed notices of motion to dismiss claims or entire actions based on the November 21 Opinion. A schedule attached to their notices of motion identified the bases for the motion in connection with each complaint that was the subject of the motion. The grounds identified were the statute of limitations bars for the Securities Act claims based on the 1998, May 2000 and May 2001 WorldCom Bond Offerings, the statute of limitations bar to the addition of defendants to Securities Act claims in pleadings amended

---

7. The definitions of the groups of defendants are incorporated from the Opinion of May 19, 2003, which addressed motions to dismiss the consolidated class action complaint. *In re WorldCom, Inc. Securities Litig.*, 294 F.Supp.2d 392 (S.D.N.Y.2003).

8. Counsel for the Milberg Weiss Actions indicated that it was unlikely that there would be any significant dispute since the November 21 Opinion was "pretty clear in what it says and what it holds," and its impact on the plaintiffs' cases was "straightforward."

9. Because there was a dispute regarding whether a dismissal should be with prejudice,

and because the notice to the class and the curative notice to plaintiffs who had filed Individual Actions were being drafted, a November 25 Order advised the parties that their responses to the draft notices, which were due December 1, should address the impact of a dismissal with prejudice on a plaintiff's ability to join the certified class. Despite this explicit request, the December 1 submission on behalf of the Milberg Weiss Actions did not provide any legal authority on the issue of whether a dismissal must be with prejudice.

after June 25, 2003,[10] and the failure to state a Section 12(a)(2) claim regarding the December 2000 WorldCom private placement. With respect to the statute of limitations issues, the defendants contend that all claims arising under the Securities Act relating to the August 1998 Bond Offering are barred; that all claims filed or added after May 12, 2003 based on the May 2000 Bond Offering are barred; that all actions pleading solely Securities Act claims that were filed after June 25, 2003 are barred; and that all claims against defendants added by amendment after June 25, 2003 to Securities Act claims are barred.

On December 11, defendants gave notice of an intent to move on similar grounds to dismiss claims in two actions recently transferred by the MDL Panel to this Court: *American International Group, Inc. v. Ebbers*, 03 Civ. 9823, and *Northwestern Mutual Life Insurance Co. v. Ebbers*, 03 Civ. 9824 ("Northwestern"). The notices were amended on or about December 17 to add these two additional actions.

As amended, the motions to dismiss are addressed to thirty-six Individual Actions, all but five of which are Milberg Weiss Actions. The motion seeks to dismiss in their entirety nine of the Milberg Weiss Actions.

Meanwhile, on December 8, the plaintiffs in the MW Alaska Action moved for reconsideration of the November 21 Opinion. The motion seeks reconsideration of the holding that Section 13 of the Securities Act and not Section 804 of Sarbanes–Oxley supplies the statute of limitations for the Securities Act claims. It does not seek reconsideration of the ruling regarding *American Pipe* tolling or regarding the December 2000 private placement. It does not address the issue of whether the dismissal should be with prejudice.

### Discussion

One of the motions to be addressed in this Opinion is the motion for reconsideration of the November 21 Opinion that was timely filed. It addresses solely the holding that the Sarbanes–Oxley statute of limitations period does not apply to the Securities Act claims in the MW Alaska Action.

The remaining issues to be addressed in this Opinion are the motions to dismiss claims in twenty-two Milberg Weiss Actions and to dismiss in their entirety nine Milberg Weiss Actions based on the rulings contained in the November 21 Opinion. In their opposition to these motions, the plaintiffs in the Milberg Weiss Actions that are the subject of these motions to dismiss ("Plaintiffs") have not undertaken to show why the November 21 Opinion does not require the dismissal of the claims. To the contrary, the Plaintiffs admit that there is no material distinction between their complaints and the complaint in the MW Alaska Action. In addition, despite the terms of the September 22 Order and their counsel's representation on November 24, Plaintiffs have opposed these motions to dismiss by repeating arguments rejected in the November 21 Opinion, and in some instances, by asserting new arguments that were not made in opposition to the motion to dismiss the MW Alaska Action.[11]

The defendants ask that, because of this failure to follow the procedure on which all parties had agreed, a procedure which was incorporated in the September 22 Order,

---

10. The notice listed the defendants in each case on whose behalf the motion was made.

11. Beginning on December 31, 2003, a number of plaintiffs in Milberg Weiss Actions that are subject to these motions to dismiss, have

filed motions to voluntarily dismiss their complaints pursuant Rule 41(a)(2), Fed.R.Civ.P., with the intention of joining the class action. There is no mention of the issue of a voluntary dismissal in the opposition to the motions to dismiss that are the subject of this Opinion.

that the Plaintiffs' opposition to these motions be deemed a motion for reconsideration and denied without further discussion of their arguments because it is both untimely and does not point to any matters that the Court overlooked in issuing the November 21 Order. Because of the importance of these issues to many parties, and because it may assist parties in this litigation to make informed decisions about their legal options, the new arguments raised in the Plaintiffs' opposition to the motions to dismiss are addressed below. In doing so, this Opinion incorporates by reference the descriptions of the relevant statutes that are contained in the November 21 Opinion, and will not repeat them here.

This Opinion will address the new issues raised by the Plaintiffs in their opposition to the motions to dismiss in the following order: the statute of limitations that applies to the Securities Act claims, the *American Pipe* tolling doctrine, the relation-back argument on behalf of four actions, Section 12(a)(2), the Plaintiffs' requests for clarification of the November 21 Opinion and leave to amend, the Plaintiffs' request for a deferral of decision on the motions to dismiss, and the dismissal of the claims and actions with prejudice. It will begin by addressing the sole issue raised in the timely motion for reconsideration of the November 21 Opinion.

1. *Statute of Limitations: the Application of Section 13 of the Securities Act*

◼ The plaintiffs in the MW· Alaska Action have moved for reconsideration of that portion of the November 21 Opinion that held that the statute of limitations that applies to their Securities Act claims is that contained in the Securities Act and not the longer statute of limitations from Sarbanes–Oxley. A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its ·decision. *See* S.D.N.Y. Local Civil Rule 6.3; *In Re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir.2003); *Chang v. United States*, 250 F.3d 79, 86 n. 2 (2d Cir.2001); *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Thus, Rule 6.3 "is to be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Zoll v. Jordache Enterprises Inc.*, No. 01 Civ. 1339(CSH), 2003 WL 1964054, at *2 (S.D.N.Y. April 24, 2003) (citation omitted). In addition, the moving. party may not "advance new facts, issues or arguments not previously presented to the Court." *Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.*, No. 988 Civ. 3607(RWS), 2002 WL 1933881, at *1 (S.D.N.Y. Aug. 21, 2002) (citation omitted).

The motion for reconsideration must be denied since the plaintiffs in the MW Alaska Action do not identify any argument, fact, or law identified to the Court in the briefing of the motion to dismiss which was overlooked by the Court. To the extent they have raised a new argument not presented in their opposition to the motion to dismiss,[12] that new argument is inappropriate for a motion for reconsideration, but is nonetheless considered on the merits in connection with the motions to dismiss

---

**12.** The plaintiffs in the MW Alaska Action raise for the first time in their motion for reconsideration the argument that the law governing the rights of defendants to contri-

bution triggers application of the longer statute of limitations contained in Sarbanes–Oxley.

pending against the other Milberg Weiss Actions.

■ The Plaintiffs in the thirty-one Milberg Weiss Actions that are the subject of these motions to dismiss argue that the November 21 Opinion erred and that the two year/five year statute of limitations from Sarbanes–Oxley applies. They make essentially two arguments. They argue that the Milberg Weiss Actions "involve" fraud, and therefore, should have the benefit of the longer statute of limitations for fraud claims enacted by Sarbanes–Oxley (1) because a fraud existed at WorldCom, and (2) because certain damage provisions of Section 11 allow for proof of fraud. These arguments are addressed in turn.

a. *Fraud Was Responsible for the World-Com Misrepresentations.*

Plaintiffs argue that each of their complaints "involves" fraud. This argument is largely duplicative of that made in opposition to the motion to dismiss claims in the MW Alaska Action. To the extent that it relies on any new contentions, such contentions are addressed below. Some brief background is in order, however, to put the arguments in context.

Section 804 provides a longer statute of limitations for "a private right of action that *involves a claim of fraud, deceit, manipulation or contrivance* in contravention of a regulatory requirement concerning the securities laws ..." 28 U.S.C. § 1658 (emphasis supplied). Section 11 provides a cause of action if any part of a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a). It does not require a showing of fraud. Instead, it imposes "a stringent

standard of liability of the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

The complaint in the MW Alaska Action repeatedly disavowed that its claims were anything other than strict liability or negligence claims; it explicitly stated that its claims did not allege fraud. For example, the opening paragraph of the complaint pleads that the action "involves solely strict liability and negligence claims." Each claim for relief pleads that "[p]laintiffs assert only strict liability and negligence claims. Plaintiffs do *not* assert claims of fraud or intentional misconduct." (Emphasis in original.)

The Plaintiffs admit that the complaint in the MW Alaska Action is "substantially similar" to each of the complaints filed in the Milberg Weiss Actions and subject to these motions to dismiss. Indeed, the only other complaint to which the Plaintiffs refer is the July 10, 2003 complaint filed in *Montana Board of Investments v. Ebbers,* 03 Civ. 1284 ("MW Montana Complaint"). The MW Montana Complaint pleads one cause of action for a violation of Section 11 based on the August 1998 WorldCom Bond Offering. Its first paragraph states that "[t]his action involves solely strict liability and *negligence* claims." (Emphasis in original.) In its claim for relief the complaint states that the plaintiff "asserts only strict liability and negligence claims. Plaintiff does *not* assert claims of fraud or intentional misconduct." (Emphasis in original.)

Despite these prominent disclaimers, Plaintiffs contend that the Section 11 claim in the MW Montana Complaint, and the other complaints that they have filed and that they represent contain similar allegations,[13] involve "manipulation" since they

---

**13.** As was true for the MW Alaska Complaint, the MW Montana Complaint bears notice that it is copyrighted by both William S. Lerach, a

Milberg Weiss partner, and Milberg Weiss itself. *See* at 455 n. 35.

include allegations that WorldCom's false and misleading SEC filings were the product of accounting "manipulations", as in the allegation that the "breadth and enormity of WorldCom's accounting manipulations were made possible due to the Company's inadequate internal controls." These uses of the word manipulation in the body of their pleadings do not convert the Plaintiffs' Section 11 claims to claims of fraud and manipulation.

Plaintiffs next argue that the Milberg Weiss Actions "involve" fraud because fraud and manipulation were "at the heart of the WorldCom disaster." The Lead Plaintiff in the WorldCom class action has chosen to allege that certain defendants associated with WorldCom engaged in securities fraud. *See In re WorldCom, Inc. Securities Litig.*, 294 F.Supp.2d 392 (S.D.N.Y.2003). None of the complaints in the Milberg Weiss Actions brings fraud claims. This was a strategic decision made in order to deprive the defendants of an undisputed ground for the removal of the actions to federal court, and for the other reasons identified above. Having made that deliberate decision, the Plaintiffs cannot rely on the existence of a fraud that they have chosen *not* to plead in order to benefit from the existence of a longer statute of limitations designed specifically for actions involving "claims" of fraud.[14]

Finally, the Plaintiffs contend that this Court has already found that the Section 11 claim in the WorldCom class action "involves" fraud and that they should be able to benefit from that ruling. They contend that the Court relied on WorldCom's admission that all the relevant SEC filings after the May 2000 WorldCom Bond Offering were materially false "due to the massive ongoing fraud", when it ruled on an issue concerning a Section 11 claim asserted in the class action. The ruling at issue was that plaintiffs in the WorldCom *Securities Litigation* class action would not have the burden in the context of their Section 11 claim of showing reliance. The ruling appeared in the Opinion which certified a class action ("Certification Opinion"), but did not contain the language the Plaintiffs purport to quote from the Certification Opinion.[15]

To appreciate the fallacy in the Plaintiffs' argument, some background in necessary. Section 11 exempts those who purchase bonds within twelve months after a registration statement becomes effective, or at any time until there is an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, from proving reliance. *In re Worldcom, Inc. Securities Litig.*, at 288. The Certification Opinion ruled that the securities laws require that where an earning statement is being used to trigger a duty to show reliance, it must comply with SEC regulations, that is, contain the material information that is necessary so that its contents are not *misleading*. *Id.* at 293 ("any 'earning statement' ... must include, for instance, such 'material informa-

---

**14.** The Plaintiffs gloss over the requirement in Section 804 that, in order for the action to qualify for the longer statute of limitations, the action must involve a "claim" of fraud. 28 U.S.C. § 1658. Their suggestion that it is sufficient for someone to have engaged in a fraud without the action including a "claim" of fraud is without any support in the statutory language or otherwise.

**15.** The Certification Opinion reads in pertinent part: "WorldCom has admitted that its financial statements from 1999 through the first quarter of 2002 overstated earnings by over $9 billion. WorldCom's admissions leave no doubt that the earning statements filed with the SEC from 1999 through the first quarter of 2002 were *misleading* and omitted material information required by the SEC to be disclosed." *In re WorldCom, Inc. Securities Litig.*, at 293 (emphasis supplied).

tion as is necessary to make the required statements, in the light of the circumstances under which they are made, not misleading,' and be prepared 'in accordance with generally accepted accounting principles.'") (citing 17 C.F.R. § 210.4–01(a)). Given WorldCom's admission that its financial statements had overstated earnings by over $9 billion, the Certification Opinion held that the earnings' statement at issue was "misleading", could not be considered an "earning statement" for purposes of Section 11, and did not operate to place on the class action plaintiffs the burden of proving reliance. *Id.*

Thus, nothing in the Certification Opinion requires an earning statement to be fraudulent before it is disqualified as an "earning statement" in the context of a Section 11 reliance analysis. An earning statement that is misleading, even if not fraudulent, violates SEC requirements and cannot be used to impose a burden on a plaintiff to show reliance when asserting a Section 11 claim.

In this connection, it is important to remember that Section 11 is a strict liability statute. As the Supreme Court explained in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976),

> In each instance that Congress created civil liability in favor of purchasers or sellers of securities it clearly specified whether recovery was to be premised on knowing or intentional conduct, negligence, or entirely innocent mistake. For example, § 11 of the 1933 Act unambiguously creates a private action for damages when a registration statement includes untrue statements of material

facts or fails to state material facts necessary to make the statements therein not misleading. Within limits specified by § 11(e), the issuer of the securities is held absolutely liable for any damages resulting from such misstatement or omission. But experts such as accountants who have prepared potions of the registration statement are accorded a 'due diligence' defense. In effect this is a negligence standard.... The express recognition of a cause of action premised on negligent behavior in § 11 stands in sharp contrast to the language of § 10(b) [of the Exchange Act].

*Id.* at 207–08, 96 S.Ct. 1375 (citation omitted).[16]

In sum, for tactical reasons, the Plaintiffs deliberately chose to include no claims for fraud in their pleadings, and even in the context of their strict liability claims, repeatedly made it explicit that those claims were not claims for fraud. With this choice they were relieved of the burden of meeting the pleading proof thresholds that accompany fraud claims and took advantage of a statute where liability is "extensive." They also sought to avoid removal of their actions to federal court. Having sought certain perceived benefits from the omission of fraud claims, the Plaintiffs ask that those same pleadings now be read generously to involve claims of fraud. This would require an internally inconsistent reading of the same pleading for contradictory purposes. As the November 21 Opinion noted, one of the "disadvantages of bringing negligence claims ... is a more narrow window of time in which to sue." at 444. The Plaintiffs have failed to show that their complaints involve

---

**16.** The Plaintiffs rely on *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.,* 918 F.Supp. 1338, 1343–44 (E.D.Mo.1996); and *U.S. v. United Technologies Corp.,* No. 5:92–CV–375, 1996 WL 653620 (D.Conn. Oct. 11, 1996). Neither has any relevance to the issues presented here. Both cases addressed whether a federal court has subject matter jurisdiction pursuant to the Contract Disputes Act. In each case, the plaintiff had explicitly alleged fraud claims.

claims of fraud such that Section 804's statute of limitations should apply to their actions.

b. *Section 11's Damages' Provisions*

Plaintiffs contend that the longer statute of limitations period under Section 804 of Sarbanes–Oxley should apply because of the rules that govern the contribution rights of defendants who become liable to plaintiffs bringing Section 11 claims and the rules that govern the extent to which outside directors are liable for damages under Section 11. Plaintiffs argue that because of these two provisions, Section 11 involves fraud even though Section 11 is a strict liability statute and a plaintiff is not required to plead or prove fraud in order to recover damages under Section 11 of the Securities Act.

Plaintiffs rely on two parts of Section 11—15 U.S.C. § 77k(f)(1)("Subsection f(1)") and 15 U.S.C. § 77k(f)(2)(A) ("Subsection f(2)(A)")—in asserting that Section 11 "encompasses" claims of fraud. Subsection f(1) provides

> (f) Joint and several liability; liability of outside director
>
> (1) Except as provided in paragraph (2), all or any one or more of the persons specified in subsection (a) of this section *shall be jointly and severally liable,* and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract[17] from any person who, if sued separately, would have been liable to make the same payment, *unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.*

15 U.S.C. § 77k(f)(1) (emphasis supplied). Contribution claims under Section 11 are governed by the six month statute of limi-

tations and must be brought within six months of a final judgment. 15 U.S.C. § 78u–4(f)(9).

■ With a single exception, Subsection f(1) provides for joint and several liability for every person that becomes liable under Section 11, and also provides each such defendant with the right to recover contribution from joint tortfeasors. Defendants who have been found liable for a violation of Section 11 are given a right to bring a contribution claim against any person who "would have been liable to make the same payment" if that person had been sued separately. 15 U.S.C. § 77k(f)(1). There is, therefore, a right to recover contribution from a person who is liable under Section 11 but who has not been sued by any plaintiff and against whom no judgment is pending. *See In re Del–Val Financial Corp. Securities Litig.,* 868 F.Supp. 547, 558 (S.D.N.Y.1994); *McCoy v. Goldberg,* 778 F.Supp. 201, 204–05 (S.D.N.Y.1991).

■ If a claim for contribution is brought under Subsection f(1), the statute provides a third party defendant with a defense against being required to contribute to payment of a judgment. A third party defendant need not contribute to payment of a judgment if the party bringing the claim for contribution was guilty of "fraudulent misrepresentation" and the third party was not. 15 U.S.C. § 77k(f)(1).

Without citing a single case to support their argument, Plaintiffs contend that this defense to contributing to the payment of a judgment converts Section 11 into a statute involving claims of fraud for the purposes of Section 804. This argument fails. As described in the November 21 Opinion, Section 11 is a strict liability

---

**17.** The statutory reference to "cases of contract" was apparently intended to signal a departure from the traditional rule in tort law against claims for contribution. *See Asdar Group v. Pillsbury, Madison and Sutro,* 99 F.3d 289, 295 n. 8 (9th Cir.1996).

statute. "Civil liability under section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the [Securities] Act and to deter negligence by providing a penalty for those who fail in their duties." *Globus v. Law Research Service Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969). By making all those who take part in preparing a registration statement jointly and severally liable if it contains any false or misleading statements or material omissions, Subsection f(1) acts as a deterrent and distributes the obligation to pay damages. *See Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 n. 7 (2d Cir.1981); *In re Del–Val Financial Corp.*, 868 F.Supp. at 558.

Subsection f(1), although present in the statute from its inception, has never been found in the subsequent seven decades to convert Section 11 into a fraud statute or a statute encompassing claims of fraud. It has no effect whatsoever on the elements of a plaintiff's Section 11 claim. A third party defendant's defense that the party claiming contribution engaged in fraud is entirely distinct from a claim of fraud by a plaintiff. *See In re Del–Val Financial Corp.*, 868 F.Supp. at 553–54 (finding that a settled defendant could maintain a Section 11 contribution claim against an accounting firm that had audited the financial statements alleged to be misleading).

Plaintiffs also argue that Section 11 involves claims of fraud because under Subsection f(2)(A) an outside director is jointly and severally responsible for payment of damages only if she "knowingly" violated the securities laws. Subsection f(2)(A) states in pertinent part:

(f) Joint and several liability; liability of outside director

(2)(A) The liability of an outside director under subsection (e) of this section shall be determined in accordance with section 78u–4 of this title . . . . .

15 U.S.C. § 77k(f)(2)(A).[18]

The incorporated section, 15 U.S.C. § 78u–4, which is part of the damages provisions of the Exchange Act, provides in pertinent part:

(g) Proportionate liability

(1) Applicability

*Nothing in this subsection shall be construed to create, affect, or in any manner modify, the standard for liability* associated with any action arising under the securities laws.

(2) Liability for damages

(A) Joint and several liability

any covered person against whom a final judgment is entered in a private action *shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation* of the securities laws.

(B) Proportionate liability

(i) In general

Except as provided in paragraph (1), a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3) . . . .

15 U.S.C. § 78u–4(g) (emphasis supplied).[19] As a consequence, an outside director is liable only for her proportional share of the damages unless it is determined that she "knowingly" violated the securities laws. *See Harden v. Raffen-*

---

**18.** The Private Securities Litigation Reform Act of 1995 ("PSLRA") amended Section 11 to add Subsection f(2)(A).

**19.** No subsection (f) was enacted by Congress.

sperger, Hughes & Co., Inc., 933 F.Supp. 763, 770 n. 7 (S.D.Ind.1996).

As was true with Subsection f(1), this portion of the Securities Act does not convert Section 11 into a private right of action that involves claims of fraud. Subsection f(2)(A) has no effect whatsoever on the standard for liability or the elements a plaintiff must assert or prove in order to hold an outside director liable for a Section 11 violation. An outside director's knowing misrepresentation is only relevant to the determination of the amount of damages for which the outside director is responsible. Subsection f(2)(A) did not alter the nature of a Section 11 claim and transform a strict liability statute into a fraud statute. An outside director remains liable for mere negligence.

### 2. Statute of Limitations: American Pipe Tolling

■ The Plaintiffs argue that the American Pipe tolling doctrine should apply to those eight Milberg Weiss Actions which were filed after June 25, 2003, that is, more than one year after the June 25, 2002 WorldCom announcement that it would be restating its financials, but before the October 24, 2003 decision certifying a WorldCom class action. They assert that each of these actions was filed as a result of a "strategic" decision and in reliance on the tolling of the statute of limitations provided by the American Pipe doctrine.[20]

There could have been no reasonable reliance on the American Pipe tolling doctrine given the number of courts that have held that a plaintiff who chooses to file an action independently of the class before a determination on class certification cannot benefit from the American Pipe tolling rule, including three district court deci-

sions from this circuit. See at 450 (collecting cases). Moreover, Plaintiffs have not identified what strategic purpose was served by waiting until after June 25, 2003 to file an Individual Action.

The Plaintiffs assert that Rule 23, Fed. R.Civ.P., permits every class member to opt out of the class and to file its own lawsuit. That is true. But, should a class member do so before there has been a decision on class certification, for the reasons explained in the November 21 Opinion, the timeliness of its suit will be measured against the applicable statute of limitations. See id. at 451–53.

The Plaintiffs recognize that the Supreme Court feared that a "needless multiplicity" of actions would be filed before a decision was reached on class certification unless every class member could rely on a tolling doctrine in the event it waited until after a decision on class certification was rendered to file an individual action. See at 449–53 (discussing American Pipe and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). They nonetheless ask whether it is efficient to wait to file an action until after the June 2004 fact discovery cutoff date that has been set in this case. They point out that every plaintiff who wishes to file an individual action could wait until after fact discovery in the WorldCom Securities Litigation has concluded in June of this year and demand that the entire process begin again.

The rationale for denying the benefits of the tolling doctrine to those who file before a decision has been made on certification of a class is described in the November 21 Opinion, and will not be repeated here. There is no room for any exception based

---

**20.** Although the Plaintiffs present their argument regarding American Pipe tolling as if it applied only to those actions that were filed after June 25, 2003, the tolling issue has implications as well for the pleadings amended after that date, and for the claims brought on the May 2000 Bond Offering in complaints filed after May 12, 2003.

on a discovery schedule set in the context of a particular litigation. In any event, in this case there is substantial ground to find that the enforcement of the doctrine of *American Pipe* tolling, including denying tolling to those who file individual actions before a decision is made on class certification, benefits class members. By October 24, 2003, the date a class was certified, class members had ample evidence that Lead Counsel for the World-Com securities class action is an aggressive and competent advocate for the class, including for both bondholders and stockholders. They also had the benefit of the Opinions that had been issued by that time in order to educate themselves about the relative merits of remaining in the class or pursing separate litigation. In addition, they had the extraordinary financial advantage of access to the discovery produced in the class action without the cost, at least immediately, of obtaining that voluminous discovery.[21] Should a class member decide to opt out of the class, a decision that must be made by February 20, and also decide, as Plaintiffs posit, to wait another four or more months to file its own action and then to request duplicative discovery, then it will have to consider what impact that delay may have on its ability to obtain permission to conduct such duplicative discovery.[22] In sum, Plaintiffs have not identified any reason to alter the ruling in the November 21 Opinion that the statute of limitations was not tolled for Individual Actions filed before October 24, 2003.

### 3. Relation–Back

 Plaintiffs contend that the claims in four of their amended complaints [23] relate back to their timely filed complaints.[24] It appears that the Plaintiffs are suggesting that their Section 11 claims based on the May 2000 Bond Offering in the amended complaints relate back to claims based on the May 2001 Bond Offering that were pleaded in the original complaints.

Pursuant to Rule 15(c), Fed.R.Civ.P., a claim in an amended pleading relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Rule 15(c)(2), Fed.R.Civ.P. *See Nettis v. Levitt*, 241 F.3d 186, 192–93 (2d Cir.2001). The "central inquiry" under Rule 15(c)(2) "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."

---

**21.** Document discovery in the WorldCom class action was largely complete in October 2003. Fact discovery is to be complete by June 18, 2004.

**22.** The discovery in the Individual Actions that are assigned to this Court for pretrial purposes and in the WorldCom class action has been consolidated. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 21242882 (S.D.N.Y. May 29, 2003). The parties before this Court have recently submitted proposals for coordinating discovery in the few WorldCom Individual Actions pending in state court with the discovery in the consolidated litigation. Any such plan will require the approval of those judges presiding over the state court litigation.

**23.** *Board of Trustees of the Teachers' Ret. Sys. of the State of Ill. v. Ebbers*, 03 Civ. 0168; *California Public Employees' Retirement System v. Ebbers*, 03 Civ. 0167; *Ill. State Bd. of Investment v. Ebbers*, 03 Civ. 0170, and *State Univ. Ret. Sys. of Ill. v. Ebbers*, 03 Civ. 0169.

**24.** This contention is contained in two cryptic footnotes in the Plaintiffs' briefs and is made without citation to any legal authority. Certain of the defendants have deciphered the argument being presented by the Plaintiffs and it is to that construction that this Opinion is addressed. Since the argument is contained only in footnotes, it would be entirely appropriate to disregard it altogether.

*Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir.1999) (citation omitted).

Plaintiffs did not give adequate notice in their original complaints that they intended to bring suit on the 2000 Bond Offering. They have not pointed to any language in any of their complaints that would have provided such notice. Each bond offering was governed by its own registration statement and it is the existence of misrepresentations in a particular registration statement that give rise to a Section 11 claim. The original complaints were based on an entirely separate transaction and the Section 11 claims in the amended pleadings that are based on the May 2000 Bond Offering do not relate back to the original complaints.

### 4. Section 12(a)(2) Claim

The Plaintiffs contend that the November 21 Opinion should not have dismissed the Section 12(a)(2) claim in the MW Alaska Action. The Plaintiffs have provided no basis, however, to conclude that the Section 12(a)(2) in either the MW Alaska Action or in the other Milberg Weiss Actions at issue here can survive a motion to dismiss.

■ The Plaintiffs argue that a Section 12(a)(2) claim should not be dismissed unless the defendants have made a clear showing on the motion to dismiss that the December 2000 transaction was not a "public offering."[25] If any "clear showing" is required, it exists from the face of their complaints and the Offering Memorandum. As described in the November 21 Opinion, the Section 12(a)(2) claim in the MW Alaska Action failed to state a claim.[26]

The Plaintiffs next contend that a "private placement can still not meet the requirements of a 'public offering' for purpose of Section 12(a)(2) if certain criteria are met...." It is not entirely clear what the Plaintiffs are arguing here.

■■ The Plaintiffs do not dispute that Section 12(a)(2) does not provide a cause of action for private placements, and that their pleadings repeatedly describe the December 2000 transaction as a private placement. Their pleadings also allege that the transaction was exempt from registration. Allegations in a pleading are "judicial admissions" which bind a party "throughout the course of the proceeding." *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers and Lybrand, LLP.*, 322 F.3d 147, 167 (2d Cir. 2003) (citation omitted). A party can "plead himself out of court by alleging facts which show that he has no claim.... [J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Id.* (citation omitted). *See also Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,

**25.** The cases cited by the Plaintiffs are inapposite. *Doran v. Petroleum Mgt. Corp.*, 545 F.2d 893, 899 (5th Cir.1977), did not address the adequacy of the pleading, and was in any event an action for violation of SEC registration requirements. While a pleading case, *In re Paracelsus Corp. Sec. Litig.*, 6 F.Supp.2d 626, 632 (S.D.Tex.1998), addressed whether there were sufficient allegations that a defendant was a "seller" for purposes of Section 12, and did not address the adequacy of the pleading in which there was an allegation that the offering was through a private placement and exempt from registration requirements. Similarly, in *UBS Asset Mgt. (New York) Inc. v. Wood Gundy Corp.*, 914 F.Supp. 66, 69 (S.D.N.Y.1996), the complaint did not allege that the offering was through a private placement and exempt from registration.

**26.** A claim may be dismissed, even when the basis of the dismissal is the assertion of an affirmative defense, where the "defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998). *See also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989) (statute of limitations).

757 F.2d 523, 528 (2d Cir.1985). Even in their opposition to this motion, Plaintiffs do not identify any exemption for registration that would apply to the December 2000 transaction except for the exemption that applies to private placements, despite the invitation in the November 21 Opinion to identify another exemption. *See* at 455–56. Nor do the Plaintiffs address the provisions of the Offering Memorandum itself which the November 21 Opinion found were incorporated into their complaints.

If the Plaintiffs are arguing once again that a multi-factored test must be applied to determine whether the transaction was a public offering despite the terms of the Offering Memorandum and their own admissions to the contrary, then they are wrong. As the November 21 Opinion pointed out, none of the cases on which the plaintiffs in the MW Alaska Action relied when opposing the motion to dismiss their action, applied a multi-factor test to assess whether a transaction was a private placement or a public offering to circumstances remotely similar to those here. at 455–56. The Plaintiffs have not discussed those cases, which they simply cite again, to show why that conclusion in the November 21 Opinion was in error.

### 5. *Request for Clarification and Leave to Amend*

■ The Plaintiffs request that the Court "clarify" whether Section 804 can ever apply to Section 11 or 12(a)(2) claims. With such a clarification, and if the clarification permits it, they request an opportunity to amend their complaints.

■ To the extent that the Plaintiffs are asking for a ruling regarding a hypothetical pleading, that application must be denied. Federal courts do not render advisory opinions. *Laird v. Tatum,* 408 U.S. 1, 14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). "[C]ourts have a duty to refrain from deciding issues whose resolution is not neces-sary to the disposition of a case." *United States v. Tomasi,* 313 F.3d 653, 661–62 (2d Cir.2002) (Sotomayor, J., concurring). *See also Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 17 (2d Cir.1993).

■ The Plaintiffs also ask that they be allowed to re-plead their complaints in compliance with any order that this Court issues. In most instances, this would mean the filing of a second amended complaint. Plaintiffs have no right to amend their pleadings a second time. *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978). Under Rule 15, Fed.R.Civ.P., however, leave to amend shall be "freely given when justice so requires." Generally, a party is allowed to amend its pleadings in the absence of a showing of "prejudice or bad faith." *Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir.1992). The Second Circuit has observed, however, that a "district court need not allow itself to be imposed upon by the presentation of theories seriatim." *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990). "Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 258 (2d Cir.2002) (citation omitted). Thus, it is appropriate to deny leave to amend if the proposed amendment is futile. *Id.; see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). An amendment may be futile if, for example, it would not survive a motion to dismiss brought pursuant to Rule 12(b)(6), *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002), or if the claims the plaintiff seeks to add would be barred by the applicable statute of limitations, *Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000). "When the moving party has had an opportunity to assert the amend-

ment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." *State Trading*, 921 F.2d at 418. A finding of "bad faith" may be warranted where a party waited to see "how he would fare on the prior motion to dismiss." *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 637 (2d Cir.1967) (denying leave to present a second Section 10(b) theory through an amended pleading). Leave to amend is also properly denied when the plaintiff had prior notice of what was required to file a complaint that did not contain the identified deficiencies and yet delayed in curing those deficiencies. *Denny*, 576 F.2d at 471. A failure to include a proposed amended pleading with a request to amend may indicate a lack of diligence and good faith. *State Trading*, 921 F.2d at 418.

The November 21 Opinion gave the Plaintiffs, who are represented by the same counsel as the plaintiffs in the MW Alaska Action, detailed guidance regarding each of the deficiencies in their pleadings that are the subject of this motion to dismiss. If the Plaintiffs were able to cure those deficiencies through an amendment it was incumbent upon them to submit a proposed amended pleading in the opposition to this motion, or at the very least to identify the amendments they propose to make that would cure those defects.[27] They have not done so.

Leave to amend is particularly inappropriate because the Plaintiffs have intentionally crafted their complaints to achieve their tactical goals, but in a way that creates the statute of limitations infirmities

identified through this motion practice. Indeed, one of the Milberg Weiss Actions at issue here filed an amended complaint as recently as November 18, 2003. It includes a Section 11 claim that is virtually identical to that in the MW Alaska Action. *See Alaska Permanent Capital Mgt. Co. v. Citigroup, Inc.*, 03 Civ. 8923. This filing occurred weeks after the motion to dismiss the MW Alaska Action was fully submitted and after the Plaintiffs had a full opportunity to consider the defendants' arguments. The amended complaint begins with a statement that the action "involves solely strict liability and *negligence* claims." (Emphasis in original.) It continues to allege that the December 2000 transaction was a private placement. It concludes with the statement that the plaintiff "asserts only strict liability and negligence claims. Plaintiff does *not* assert claims of fraud or intentional misconduct." (Emphasis in original.)[28]

The application for leave to amend is denied, with one exception discussed below. The Plaintiffs have not shown that any additional amendment would not be futile. The Plaintiffs have had ample opportunity to show how they would cure the deficiencies identified in their pleadings. It is also clear that further amendment would be undertaken in bad faith. The Plaintiffs' refusal to cure the deficiencies in their pleadings has been an intentional tactical decision. Further motion practice by these Plaintiffs over the sufficiency of their pleadings would place an unfair burden on the defendants and the Court.

---

**27.** In their motion for reconsideration, the plaintiffs in the MW Alaska Action requested leave to amend their complaint. They did not provide a proposed amended pleading. It should be noted that they filed their First Amended Complaint after they were given notice at the September 12 conference of the defendants' intention to move to dismiss Individual Actions on the ground that claims were

barred by the statute of limitations and that the Individual Actions were not covered by *American Pipe* tolling.

**28.** In contrast, on January 8, 2004, Northwestern filed an amended complaint that, *inter alia*, adds claims pursuant to the Securities Exchange Act of 1934.

On January 8, 2004, Northwestern served an amended complaint. Their original complaint was filed on May 30, 2003, and contained two time-barred, but one timely claim. The amended complaint includes Exchange Act claims. Because the defendants did not have an opportunity to include any discussion of this amended complaint in their reply briefs,[29] Northwestern's amended pleading will be addressed in a separate Opinion after the parties have had an opportunity to be heard.

### 6. *Deferral of Decision*

The Plaintiffs ask that any decision on this motion be deferred until after the Court of Appeals for the Second Circuit decides the appeal that certain of the Milberg Weiss Actions have taken in connection with this Court's certification on December 16, 2003 of a question of law relating to the denial of their motions to remand their actions to state court. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003). For the reasons which will be given in a separate Opinion, this request is denied.

### 7. *Dismissal With Prejudice*

▆ The Plaintiffs request that any dismissal of claims based on the May 2000 or May 2001 Bond Offerings be without prejudice. "Statutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111,

117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (citation omitted). As the Supreme Court has observed, "[i]t goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose." *Id.* at 125, 100 S.Ct. 352. Consequently, a complaint filed beyond the statute of limitations is dismissed with prejudice. *See, e.g., McGregor v. United States*, 933 F.2d 156, 161–62 (2d Cir.1991); *see also EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397–98 (2d Cir.1997) (applying New York law). Res judicata attaches to such dismissals and bars a party from bringing another suit on all issues that could have been but were not raised and litigated in the suit. *See Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir.1986); *PRC Harris, Inc. v. Boeing*, 700 F.2d 894, 896 (2d Cir.1983).

The Plaintiffs rely on *Stutz v. Minnesota Mining Manufacturing Co.*, 947 F.Supp. 399 (S.D.Ind.1996), for the proposition that claims dismissed as barred by the statute of limitations may be dismissed without prejudice to later refiling. *Stutz* appears to hold that the plaintiff, who had filed an individual time-barred action prior to the decision on class certification, may be able to benefit from *American Pipe* tolling and bring an individual action if a class is certified to the extent that his claims are "identical to those claims in a sustainable class action." *Id.* at 404. This Court declines to follow *Stutz*, which is at odds with the weight of authority on this issue and the law described above and in the November 21 Opinion regarding statutes of limitations bars and *American Pipe* tolling.

---

**29.** At its earliest, the amended pleading would have been served on the defendants on the day that their reply briefs were due.

*Conclusion*

The motion for reconsideration by the plaintiffs in the MW Alaska Action, 03 Civ. 6592, is denied.

The motions to dismiss brought against thirty Milberg Weiss Actions are granted. Decision is reserved on the motion to dismiss filed against the Northwestern Mutual Life Insurance Company complaint, 03 Civ. 9824.

Counsel for the Underwriter Defendants shall prepare a separate proposed Order for each action which conforms to the rulings herein, and in the case of the nine Milberg Weiss Actions which are dismissed in their entirety, separate proposed Judgments.

SO ORDERED.