**UBS ASSET MANAGEMENT (NEW YORK) INC. and The Chase Manhattan Bank, N.A., Plaintiffs,**

v.

**WOOD GUNDY CORP. and Richardson Greenshields of Canada, Limited, Defendants.**

**No. 95 Civ. 5157.**

United States District Court, S.D. New York.

Feb. 7, 1996.

Howard, Darby & Levin, New York City (Daniel M. Mandil, Philip K. Howard, of counsel), for Plaintiff UBS Asset Management.

Milbank, Tweed, Hadley & McCloy, New York City, (Toni C. Lichstein, of counsel), for Plaintiff The Chase Manhattan Bank.

Weil Gotshal & Manges, New York City, (Dennis J. Block, Jonathan M. Hoff, H. Miriam Farber, of counsel), for Defendant Richardson Greenshields of Canada.

Epstein Becker & Green, New York City (Claudia M. Cohen, of counsel), for Defendant Wood Gundy Corp.

## MEMORANDUM AND ORDER

STANTON, District Judge.

Plaintiffs UBS Asset Management (New York) Inc. ("UBSAM") and The Chase Manhattan Bank, N.A. ("Chase") sue defendants Wood Gundy Corp. ("Wood Gundy") and Richardson Greenshields of Canada, Limited ("Richardson"), asserting violations of the securities laws and various common law claims.

Richardson moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for an order dismissing the complaint.

## BACKGROUND

The complaint alleges the following:

Wood Gundy is a registered broker-dealer located in New York. Richardson is a Canadian broker-dealer not registered in the United States.

Plaintiffs' claims arise out of their purchase of unrated debt securities ("the Debt Securities") issued by Confederation Life Insurance Company ("Confed"), a Canadian life insurance company, for certain fiduciary pension fund accounts ("the Accounts") for which UBSAM acted as investment advisor and Chase acted as investment manager and trustee.

Late in the summer of 1993, Wood Gundy contacted UBSAM to solicit sales of the Confed Debt Securities. Wood Gundy forwarded to UBSAM offering materials, including a circular and an information memorandum, which stated that Confed's Debt Securities were commercial paper issued pursuant to an exemption from the Securities Act, and that the size of Confed's Debt Securities program would be up to one billion Canadian dollars. Over the next nine months, Wood Gundy sold the debt securities to UBSAM and Chase, acting on behalf of the Accounts.

In June of 1994, Wood Gundy ceased selling the Debt Securities, and Richardson "substituted for Wood Gundy," selling the Debt Securities to UBSAM and Chase from June 15, 1994 until July 29, 1994. (Complaint at ¶ 34.)

On August 11, 1994, Confed was seized by Canadian authorities because it was insolvent, and the Debt Securities became virtually worthless.

Plaintiffs filed this action on July 11, 1995.

## DISCUSSION

Plaintiffs assert against Richardson claims based on sections 12(1) and 12(2) of the Securities Act of 1933, sections 10(b), 15(a)(1), and 29(b) of the Exchange Act of 1934 and SEC Rule 10b–5, as well as common law claims of actual and constructive fraud and breach of an implied covenant of good faith and fair dealing. Richardson moves to dismiss those

claims pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

### A. Standard for Motion to Dismiss

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6),

"a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (internal quotation marks omitted).

### B. Claimed Exemptions

Richardson claims that the complaint establishes as a matter of law that Richardson was entitled to several exemptions from the securities laws that require dismissal of various of plaintiffs' claims.

■ The burden of establishing an exemption is on the person who claims it. *SEC v. Ralston Purina, Co.,* 346 U.S. 119, 126, 73 S.Ct. 981, 985, 97 L.Ed. 1494 (1953).

### 1. Exempted Securities

■ Richardson argues that plaintiffs' claims based on sections 10(b), 15(a)(1), and 29(b) of the Exchange Act and section 12(2) of the Securities Act fail to state a claim because, on the face of the complaint, the Debt Securities were not securities as defined by section 3(a)(10) of the Exchange Act, which excludes from the definition of security "any note ... which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." 15 U.S.C. § 78c(a)(10). In *Zeller v. Bogue Elec. Mfg. Corp.,* 476 F.2d 795 (2d Cir.), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973), that section 3(a)(10) exclusion was deemed coextensive with section 3(a)(3) of the Securities Act, which exempts from that Act's registration requirements

"Any note ... which arises out of a current transaction or the proceeds of which

have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

15 U.S.C. § 77c(a)(3); *see Zeller*, 476 F.2d at 800.

The exemption applies only to "prime quality negotiable commercial paper." *See Sanders v. John Nuveen & Co.*, 463 F.2d 1075, 1079 (7th Cir.), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972). "The Division [of Corporation Finance of the SEC] has relied on several factors to determine that commercial paper is of 'prime quality,' including the financial strength of the issuer, support of the commercial paper by a form of credit enhancement, or rating of the commercial paper by a national rating agency." *Mercury Finance Co.*, SEC No–Action Letter, 1989 WL 245554 at *5 (Jan. 20, 1989). However, courts have declined to find commercial paper prime where it was issued to cover financing for an insolvent company. *See Sanders*, 463 F.2d at 1079; *United States v. Hill*, 298 F.Supp. 1221, 1227 (D.Conn 1969).

Richardson argues that the complaint alleges facts from which a prime rating could be implied.

However, the complaint specifically alleges that the Confed Debt Securities were not prime. It also alleges that by the summer of 1993 Confed was already in the midst of a capital and liquidity crisis, and that at least one Canadian rating service had concluded in 1992 that Confed was effectively insolvent by the end of 1991. (Complaint at ¶¶ 9, 25.).

Whether the Debt Securities were prime is therefore a question of fact not to be resolved on a motion to dismiss.

## 2. Exempted Transactions

Richardson argues that plaintiffs fail to state a claim for violation of sections 12(1) and 12(2) of the Securities Act because the sale of the Debt Securities was not a public offering but an exempted transaction.

### a. Private Placement

■ Richardson argues that the sale of the Debt Securities was not a public offering but a private placement under section 4(2) of the Securities Act, which exempts from the registration requirements of that Act "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).

In determining whether a sale of securities falls within the private placement exemption, "the governing fact is whether the persons to whom the offering is made are in such a position with respect to the issuer that they either actually have such information as a registration would have disclosed, or have access to that information." *Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 466 (2d Cir.), *cert. denied*, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959).

The complaint does not allege whether the Debt Securities were offered only to offerees who would qualify. Accordingly, Richardson cannot establish from its face that Richardson's sales of the Debt Securities to Chase and UBSAM were a private placement.

### b. Transactions by a Dealer

■ Richardson argues that the sales are exempt transactions by a dealer under section 4(3) of the Securities Act, which exempts from that Act's registration requirements

"transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except—

(A) transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter...."

15 U.S.C. § 77d(3).

Richardson argues that the complaint establishes that this exemption applies because the alleged public offering of the Debt Securities took place at the latest in August of 1992, when Confed initiated its program.

The complaint states that the Debt Securities were sold on various dates and had different maturity dates. (Complaint at ¶¶ 34–35, 65.) Plaintiffs argue that the short-term Debt Securities were offered to

the public on the various dates plaintiffs purchased them. Whether those sales were indeed separate offerings is a question of fact. Richardson therefore cannot establish from the face of the complaint that the sales of the Debt Securities were exempt transactions under section 4(3).

### 3. Transaction of Business Outside the Jurisdiction of the United States

█ Plaintiffs assert a claim under section 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b), alleging that Richardson violated section 15(a)(1) of that Act, 15 U.S.C. § 78o(a)(1), which requires any broker or dealer who uses any instrumentality of interstate commerce in effecting any purchase or sale of any security to register with the Commission unless exempted.

Because sections 3(a)(4) and 3(a)(5) of the Exchange Act define the terms "broker" and "dealer" to apply to "any person" regardless of United States citizenship, *see* 15 U.S.C. § 78c(a)(4) & (5), section 15(a)(1) applies to foreign broker-dealers who fit its definition, unless exempted by section 30(b) of the Exchange Act, which states:

> "The provisions of this chapter or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he transacts such business in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to prevent evasion of this title."

15 U.S.C. § 78dd(b). In a 1989 release, the SEC commented on section 30(b):

> "A broker-dealer operating outside the physical boundaries of the United States, but using the U.S. mails, wires or telephone lines to trade securities with U.S. persons located in this country, would not be, in the words of section 30(b), 'transact[ing] a business in securities without the jurisdiction of the United States.'"

Registration Requirements for Foreign Broker–Dealers, Exchange Act Release No. 27,-017, 43 SEC Dock. 2079, 1989 WL 258954 at *6 (July 25, 1989). That release discussed Rule 15a–6, which provides:

> "(a) A foreign broker or dealer shall be exempt from the registration requirements of sections 15(a)(1) or 15B(a)(1) of the Act to the extent that the foreign broker or dealer: (1) Effects transactions in securities with or for persons that have not been solicited by the foreign broker or dealer...."

17 C.F.R. § 240.15a–6.

Richardson argues that it is exempt from registration in the United States as a broker or dealer under section 30(b) and Rule 15a–6(a)(1) because the complaint does not allege that Richardson solicited plaintiffs to purchase the Debt Securities.

However, Richardson bears the burden of establishing that an exemption applies. *See Ralston Purina,* 346 U.S. at 126, 73 S.Ct. at 985. That the complaint does not allege any solicitation of plaintiffs by Richardson does not establish as a matter of law that Richardson did not in fact solicit them. *See, e.g.,* Release No. 27,017, 1989 WL 258954 at *8 ("Conduct deemed to be solicitation includes ... advertising one's function as a broker or a market maker in newspapers or periodicals of general circulation in the United States"). Richardson has therefore not borne its burden.

### C. Failure to Plead Fraud with Particularity

Richardson argues that the allegations of fraud in the complaint do not satisfy Federal Rule of Civil Procedure 9(b), which states:

> "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The complaint alleges that Richardson made affirmative misrepresentations to plaintiffs when the plaintiffs were provided with the offering materials.

█ "[F]raud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations." *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Although "no specific connection between fraudulent repre-

sentations in the Offering Memorandum and particular defendants is necessary where ... defendants are insiders or affiliates participating in the offer of the securities in question," *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986), the complaint must allege facts showing that the defendant was an insider or affiliate of the issuer. *See DiVittorio,* 822 F.2d at 1249 (defendants not insiders or affiliates where they were not alleged to be directors or officers or tied to the offering memorandum in any specific way); *Adler v. Berg Harmon Associates,* 790 F.Supp. 1222, 1228 (S.D.N.Y.1992) (defendants not affiliates where there was "no allegation that any of them controlled the content of the misrepresentations and omissions in the offering memoranda").

■ The complaint does not allege facts showing that Richardson was an insider or affiliate of Confed, that Richardson had any control over the content of the offering materials, that it ever provided them to plaintiffs, or that it even knew about them. It does not allege any affirmative misrepresentation in any other communication. Accordingly, the affirmative representations are not alleged with the specificity required by Rule 9(b).

The complaint also alleges that Richardson did not inform plaintiffs of several material facts: that Confed's condition was so precarious that it would not be able to pay the Debt Securities at maturity, that the size of the entire Confed Debt Securities program was only a fraction of the one billion Canadian dollars it had been represented to be, that Richardson was selling plaintiffs nearly all of the Confed Debt Securities being sold in the United States, that other buyers, particularly Canadian buyers more informed about Confed's condition, refused to participate in the program, and that the Debt Securities were not true commercial paper and were unrated by a nationally recognized statistical rating organization. (Complaint at ¶ 11–12, 34.)

However, the complaint does not allege facts showing that Richardson knew or recklessly disregarded any of those facts. Although knowledge may be averred generally, "plaintiffs can be required to supply a factual basis for their conclusory allegations regarding that knowledge." *Ross v. A.H. Robins*

*Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *see Devaney v. Chester,* 813 F.2d 566, 568 (2d Cir.1987) (allegations that defendants concealed information did not satisfy Rule 9(b) where no facts were alleged to suggest when and how defendants obtained that knowledge). The allegations of knowledge therefore do not satisfy Rule 9(b).

The complaint also alleges that Richardson sent plaintiffs sales confirmations that did not indicate whether Richardson was acting as agent or principal and what Richardson's remuneration was if it was acting as an agent. (Complaint at ¶ 34.) While Richardson could have been expected to know the capacity in which its own sales were made, there was no likely prospect that Richardson would reap concrete benefits by not disclosing whether it was acting as agent or principal in selling the Debt Securities and what its remuneration was if it was acting as an agent.

The fraud claims therefore do not plead knowledge and scienter with the particularity required by Rule 9(b).

■ This affects not only the section 10(b), Rule 10b–5, and common law fraud claims, but also those made under section 12(2) and for breach of an implied covenant of good faith and fair dealing. Where claims of fraud are asserted, claims alleged to arise out of the same conduct are considered to sound in fraud and are subject to the same pleading requirements under Rule 9(b). *See Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd,* 788 F.2d 3 (2d Cir. 1986); *Drexel Burnham Lambert Group v. MicroGenesys, Inc.,* 775 F.Supp. 660, 666–67 (S.D.N.Y.1991). The Second Circuit has held section 12(2) claims properly dismissed where fraud claims based on the same conduct did not plead scienter with particularity, *see Devaney v. Chester,* 813 F.2d 566, 569 (2d Cir.1987), even though section 12(2) claims do not require a showing by the plaintiff of any kind of scienter on the part of the defendant. *See Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir.1989); *Wigand v. Flo–Tek, Inc.,* 609 F.2d 1028, 1034 (2d Cir.1979).

72

Because the claims made under section 12(2) and for breach of an implied covenant of good faith and fair dealing arise out of the same alleged misrepresentations and omissions as the fraud claims, those claims also do not satisfy Rule 9(b).

## CONCLUSION

Richardson's motion pursuant to Fed. R.Civ.P. 9(b) to dismiss plaintiffs' claims based on section 12(2) of the Securities Act, section 10(b) of the Exchange Act, Rule 10b–5, common law fraud and constructive fraud and breach of an implied covenant of good faith and fair dealing is granted. Richardson's motion to dismiss plaintiffs' other claims is denied. The only claims against Richardson that remain are those made under section 12(1) of the Securities Act and sections 29(b) and 15(a)(1) of the Exchange Act.

Plaintiffs have leave to replead within 30 days.

So ordered.