HOOPER, Chief Justice.
The defendant Triple E Transport, Inc., appeals from a judgment based on a jury verdict awarding $250,000 to the plaintiff United States Pipe and Foundry Company, Inc. (“U.S.Pipe”). We affirm.
The case arose from a motor-vehicle accident in Birmingham involving a Triple E tractor/trailer unit transporting a load of pipe for U.S. Pipe to a point in Illinois. A second motor vehicle struck the Triple E truck, causing the load of pipe to spill into an oncoming lane and to kill the driver of a third vehicle. The deceased driver’s estate sued Triple E, its driver, the driver of the second vehicle, and U.S. Pipe. Triple E’s insurer and the insurer of the second vehicle each offered its policy limits of $1,000,000. U.S. Pipe paid an additional $250,000. That case was settled and dismissed.
U.S. Pipe filed this present action against Triple E, seeking indemnification for the $250,000 it had paid, alleging that Triple E had breached the “Master Transportation Agreement.” Triple E submitted an answer admitting that it had refused to contribute to the settlement or to indemnify U.S. Pipe, but it denied that it had breached its obligation under the transportation contract. On August 29, 1996, the defendant Triple E moved for a summary judgment. On February 21, 1997, Triple E supplemented its initial brief in support of its motion for summary judgment. Following a hearing, the trial court denied the motion. Triple E later submitted the same arguments in support of a motion for a judgment as a matter of law. On December 9, 1997, Triple E moved to stay further proceedings and submitted to the United States Department of Transportation, Federal Highway Administration, Surface Transportation Board, a petition for a declaratory order pursuant to 49 U.S.C. § 13710(b). On December 18, 1997, the trial court denied Triple E’s motion to stay further proceedings. In response, Triple E petitioned this Court for a writ of mandamus directing the trial court to stay all proceedings pending resolution of the motor-contract-carrier/motor-common-carrier issue by the Surface Transportation Board. This Court on January 5, 1998, denied Triple E’s petition, without an opinion (docket no. 1970502).
This case was tried before a jury, beginning January 5, 1998. The trial court denied Triple E’s motions for a judgment as a matter of law. On January 7, 1998, the jury returned a $250,000 verdict for U.S. Pipe and against Triple E. On January 12, 1998, U.S. Pipe filed a motion to have the court calculate and add prejudgment interest to the amount of the verdict. The trial court granted this motion; with interest, the total amount of the judgment came to $273,506.84. Triple E filed a notice of appeal to this Court on February 17, 1998. On March 26, 1998, Triple E moved to suspend the appeal pending the issuance of a controlling decision of the United States Department of Transportation. This Court denied Triple E’s motion to suspend the appeal. On May 7, 1998, the Surface Transportation Board (“STB”) denied Triple E’s petition for a declaratory order pursuant to 49 U.S.C. § 13710. Triple E petitioned the STB for a reconsideration. When the parties filed their briefs in this appeal, that petition remained pending. The defendant raises 16 issues on appeal. We address only five of those issues be *292 cause the other issues raised are so similar to these five as to be indistinguishable or as to be subissues of these five. In fact, in its brief, Triple E discusses only these five issues. The five issues are: (1) whether U.S. Pipe’s state-law breach-of-contract claim is preempted by federal law; (2) whether the shipment at issue traveled under motor-contract carriage; (3) whether U.S. Pipe was entitled to indemnification of the $250,000; (4) whether the trial court correctly denied Triple E’s motion for a summary judgment and its motion for a judgment as a matter of law; and (5) whether the trial court erred in refusing to give Triple E’s requested jury charges.

Statement of Facts

In March 1992, U.S. Pipe and Triple E entered into a “Transportation Agreement” that provided for Triple E, as the carrier, to transport for U.S. Pipe, as the shipper, a continuing series of shipments of certain materials. Triple E was certified as an interstate motor carrier of freight holding both common-carrier authority and contract-carrier authority under federal law. That contract contained an indemnification clause.
On October 18, 1993, Triple E was transporting ductile iron pipe for U.S. Pipe, pursuant to the terms of the Agreement. One of Triple E’s trucks carrying a load of that pipe was involved in an accident in Birmingham, which resulted in the death of Kathy Marie Brown. Before moving the shipment, U.S. Pipe had issued a “straight bill of lading.”

Preemption

Triple E argues that because the shipment moved pursuant to a bill of lading, federal statutes and federal regulations preempt Alabama law, control this case, and preclude the application of the indemnity agreement. Triple E argues that the only lawful contract between it and U.S. Pipe was the bill of lading. It also argues that U.S. Pipe’s seeking indemnity constitutes a serious violation of federal law in itself.
U.S. Pipe responds by arguing that Triple E waived any federal preemption argument by not affirmatively pleading that defense. U.S. Pipe also argues that federal transportation law and a May 7, 1998, decision of the STB mandate that the dispute between U.S. Pipe and Triple E be governed by Alabama law.
Our review is subject to the presumption that the jury’s verdict was correct, and this Court is allowed to revise a judgment based on this verdict only if it is convinced by a preponderance of the evidence that the jury’s verdict was palpably wrong and manifestly unjust. Baldwin v. Alabama Insurance Brokers, Inc., 599 So.2d 1196 (Ala.Civ.App.1992).
This Court has consistently held that federal preemption is an affirmative defense. Rule 8(c), Ala.R.Civ.P. Although federal preemption is not specifically listed in Rule 8(c) as an affirmative defense, the Committee Comments to that rule indicate that the rule provides only a partial list. Rule 8(c) states that the defenses listed there and “any other matter constituting an avoidance or affirmative defense” must be affirmatively pleaded. Rule 7(a) names the pleadings allowed in a civil action; they include the complaint, the answer, and certain other filings that, like a complaint and an answer, state claims or defenses. The failure to plead an affirmative defense results in a waiver. Triple E never raised federal preemption in its pleadings. It raised that defense for the first time in its motion for a summary judgment. Thus, Triple E did not affirmatively plead federal preemption; that defense was effectively waived. This Court, therefore, may not consider the validity of that defense. Rule 8(c), Ala.R.Civ.P.; Sperau v. Ford Motor Co., 674 So.2d 24, 36-37 (Ala.1995); Powell v. Phenix Fed. Sav. & Loan Ass’n, 434 So.2d 247, 251 (Ala.1983).

Motor Contract Carrier v. Motor Common Carrier

Triple E argues that the essence of this case is whether Triple E, in mov *293 ing the shipment of iron pursuant to the Agreement containing the indemnity clause, was acting as a common carrier or was acting as a contract carrier. Triple E asserts that the shipment moved under “motor common carriage.” A “motor common carrier” is defined as “a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes or both.”49 U.S.C. § 10102(15)(B) (1993). However, U.S. Pipe claims that Triple E was acting as a “motor contract carrier” because, it says, Triple E had provided for U.S. Pipe’s specialized needs. By definition, a “motor contract carrier” is
“a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons — (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person.”
49 U.S.C. § 10102(15)(B) (1993).
It is evident from the record that U.S. Pipe did not want to use a common carrier, but wanted a carrier to meet its special needs. For instance, the Transportation Agreement provided:
“Whereas, Carrier is a licensed contract carrier engaged in the business of hauling and transporting material by motor vehicles and provided for herein; and, Carrier is willing and able to meet the special needs of Shipper and is prepared to dedicate a sufficient amount of its equipment as dictated by the prevailing circumstances to meet those needs.”
The Transportation Agreement indicates that Triple E was acting as a motor contract carrier because it was willing to meet the special needs of U.S. Pipe.
The special requirements of the agreement are set out in the Transportation Agreement and in the deposition of David Jones, the traffic manager for U.S. Pipe. For instance, Triple E provided carriers with flatbed trailers for carrying ductile-iron pipe. Triple E requires its drivers to be trained and capable of strapping down ductile-iron-pipe cargo. Further, its drivers must be capable of delivering supplies to customers “off road.” David Jones’s testimony indicates that U.S. Pipe does not use motor common carriers for these distinct needs. Triple E was able to serve U.S. Pipe’s particular contractual needs because these parties could negotiate for certain specific items, which motor common carriers do not provide, including a special rate scale, insurance coverage, and indemnity.
Although there was a factual dispute concerning whether U.S. Pipe’s needs were indeed special, the jury found for U.S. Pipe, and a jury’s verdict is presumed correct. This Court will reverse a judgment based on a jury verdict only if it is “ ‘convinced by a “preponderance of the evidence that the jury’s verdict was palpably wrong and manifestly unjust.” ’ ” Osborn v. Custom Truck Sales & Service, 562 So.2d 243, 248 (Ala.1990); Tallant v. Grain Mart, Inc., 432 So.2d 1251, 1255 (Ala.1983). The verdict makes it apparent that the jury found the evidence sufficient for it to find that Triple E met the special needs contracted for by U.S. Pipe. That finding was not “palpably wrong and manifestly unjust.”
Triple E argues that it must be found to have acted as a common carrier because a bill of lading was issued in regard to the items carried. However, it is clear that the issuance of such a document is not a factor to be considered in determining whether the carrier was a contract carrier or was a common carrier. A “bill of lading” is a shipping document that states such things as the name and address of the consignee and a description of the cargo. In essence, it is a receipt. See Black’s Law Dictionary (6th ed. 1990). The bill of lading does not determine the applicable law.

Indemnity

The ultimate issue before this Court is whether the indemnity clause in *294 the Transportation Agreement applies in this case. That Agreement reads in pertinent part:
“Carrier does hereby RELEASE and shall ACQUIT, INDEMNIFY, DEFEND, and HOLD HARMLESS Shipper, its owners, shareholders, [and] parent company ... from and against any and all claims, causes of action, suit losses, liabilities, costs, expenses and/or damages, including reasonable attorneys’ fees, incurred or sustained by them, or any of them, as a result of injury or death to persons ... sustained in connection with or arising out of ... the performance of the warranties and services made a part hereof.”
The parties agree that this clause was a part of their contract.
Triple E argues that the indemnity agreement does not apply in this case, because the payment for which U.S. Pipe claimed indemnity was made as part of a settlement and not pursuant to a judgment. However, we note that this clause provided that Triple E was to indemnify U.S. Pipe “from and against any and all claims, causes'of action, suit losses, liabilities, costs, expenses and/or damages ... incurred or sustained by [the shipper, U.S. Pipe,] as a result of injury or death to persons ... sustained in connection with [the carrier’s] services.” A person sustained an “injury” that resulted in death, as a result of an accident that occurred “in connection with” or that “[arose] out of’ the carrier’s “performance.” A fair reading of this clause suggests that the payment made by U.S, Pipe to settle the wrongful-death claim was within the range of items the parties intended the indemnification clause to cover.

The Denial of the Defendant’s Summary Judgment Motion

Triple E argues that the trial court erred in denying its motion for a summary judgment. This case was tried before a jury. At the close of the evidence, Triple E moved for a judgment as a matter of law, and the court denied that motion. We have previously declined to adopt an absolute rule that an erroneous denial of a motion for summary judgment is rendered moot by a subsequent verdict in favor of the nonmovant, lest we encourage a party or witness to “change[ ] testimony or other evidence based on experience gained during the proceedings on the motion for summary judgment.” Superskate, Inc. v. Nolen, 641 So.2d 231, 233-34 (Ala.1994). Because the record in this case does not suggest the plaintiff “changed testimony or other evidence” based on its experience gained at the summary-judgment stage, we will consider whether the court erred in denying the later motion for a judgment as a matter of law.
A court may enter a judgment as a matter of law “only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ.” Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303 (Ala.1997) (quoting earlier cases). Further, when this Court reviews a ruling on a motion for a judgment as a matter of law, it must view the evidence in the light most favorable to the nonmoving party. Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). Triple E argued in its motion for a judgment as a matter of law that it was not required to indemnify U.S. Pipe because, it claimed, the Transportation Agreement in which the indemnity clause appeared was a contract of adhesion. Its initial brief in support of the motion was supplemented with a presentation of arguments arising from federal motor-carrier law. U.S. Pipe responded by arguing that the parties in this case were corporations engaged in a contractual relationship and were represented in that relationship by competent businessmen, and that in the contract Triple E knowingly agreed to indemnify U.S. Pipe for all liability it incurred for personal injury suffered in connection with Triple E’s performance of the work called for by the contract. The trial judge rejected Tri *295 pie E’s argument. We see no error in that ruling.

Jury Instructions

Triple E contests the trial court’s refusal to give its requested jury instructions regarding the federal qualifications of contract carriers and common carriers. A trial court has broad discretion in giving jury instructions, as long as its instructions accurately reflect the law at issue and the facts of the case. E.g., Woods v. State, 724 So.2d 40 (Ala.Crim.App.1998). If the trial court’s charge adequately covers the law stated in requested charge, court may properly refuse to give requested charge. Drummond Co., Inc. v. Boshell, 641 So.2d 1240 (Ala.1994). Given the court’s discretion and given the fact that we find the requested instructions misleading (and perhaps confusing, because of typographical errors), we see no error in the court’s denying those requested instructions.

Conclusion

The judgment ordering indemnification as to the $250,000 payment is affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, SEE, and LYONS, JJ., concur.
COOK, J., concurs in the result.