926 So.2d 290 (2005)
Charles R. BUIST
v.
TIME DOMAIN CORPORATION et al.
1031396.
Supreme Court of Alabama.
July 29, 2005.
Rehearing Denied October 21, 2005.
*291 James C. Alison, Huntsville; and Joseph C. Long, Norman, Oklahoma, for appellant.
*292 Frank McRight and J. Clark Pendergrass of Lanier Ford Shaver & Payne, P.C., Huntsville, for appellees.
PER CURIAM.
Charles R. Buist appeals from an order of the Madison Circuit Court entering a partial summary judgment for Time Domain Corporation ("Time Domain"), Ralph Petroff, Mark Petroff, Lori Sloan, and Kneeland Youngblood (collectively "the defendants"). We reverse and remand.

Facts and Procedural History
Time Domain, a Delaware corporation, has its principal place of business in Madison County. The individual defendants are officers and/or directors of Time Domain.
In 2001 and early 2002, Buist purchased stock in Time Domain, initially from stockholders and then directly from the corporation. Each purchase was reflected by a stock-purchase agreement. Each agreement explicitly stated that the securities being sold pursuant to the agreement were not registered with either the federal government or the government of any state.
In addition to issuing shares of its stock, Time Domain issued debt securities to raise additional capital. In September and October 2002, Time Domain solicited Buist to participate in this debt financing, and he did.
In April 2003, Buist learned that Time Domain would soon be taken over by new investors. During the ensuing reorganization, all existing shares in Time Domain would be "reverse split sixty-nine to one," that is, for every 69 shares owned, the investor would be issued 1 share of the new class of stock. Displeased, and believing that as a result of the reverse stock split his ownership interest in Time Domain would be tremendously diluted, Buist wrote a letter to Time Domain's board of directors dated May 6, 2003, demanding payment in full and interest on the promissory note in which he had invested, objecting to the reorganization, and requesting a valuation of his shares of stock in Time Domain.
On May 30, 2003, Buist filed this action in the Madison Circuit Court, alleging that the defendants were liable for violations of the Alabama Securities Act ("the ASA"), minority shareholder oppression, misrepresentation, fraud, and bad faith. Buist later amended his complaint to add a claim of breach of fiduciary duty.
The defendants filed a motion for a partial summary judgment as to the count alleging violations of the ASA. The defendants argued that Buist's claims in that regard were preempted by federal law. Specifically, the defendants contended that the securities sold to Buist were sold as "covered securities" pursuant to Rule 506 of Regulation D promulgated by the Securities and Exchange Commission ("the SEC") and, therefore, that federal securities law preempted Alabama's securities law. Because the only claims of securities violations Buist raised were based on state law, the motion argued, the defendants were entitled to a judgment as a matter of law on the basis of federal preemption. The defendants supported their motion with evidence indicating that Time Domain had filed at least two Form D's with the Alabama Securities Commission ("the ASC") and that the ASC had found both filings to "satisfy [its] current requirements."
In opposition to the defendants' motion for a partial summary judgment, Buist argued that the defendants had not proved that Time Domain's securities were "covered securities" under Rule 506. Buist asserted that there were numerous requirements one must fulfill under Rule 506 in order for securities to be "covered" *293 under that rule and that Time Domain had failed to prove compliance with those requirements.
The defendants' motion for a partial summary judgment was heard on May 28, 2004, and that same day the trial court granted the motion. On July 1, 2004, the trial court certified its order as final pursuant to Rule 54(b), Ala. R. Civ. P. Buist timely appealed.

Standard of Review
Our review of a summary judgment is de novo. To grant a motion for a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Throughout the determination of a summary-judgment motion, the court must view the facts in the light most favorable to the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
A defendant bears the burden of proving an affirmative defense, Ex parte Fort James Operating Co., 895 So.2d 294, 297 (Ala.2004); Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409, 415 (Ala.1999). Federal preemption is an affirmative defense. Triple E Transport, Inc. v. U.S. Pipe & Foundry Co., 732 So.2d 290, 292 (Ala.1999).
"Only `"[w]hen there is no genuine issue of material fact as to any element of an affirmative defense, . . . and it is shown that the defendant is entitled to a judgment as a matter of law"' is a summary judgment proper. Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 445 (Ala.1999) (quoting Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052, 1053 (Ala.1986)). `"If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment is inappropriate."' Id.

"Moreover, `"[t]he manner in which the movant's burden of production is met depends upon which party has the burden of proof ... at trial."' Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)). If, as is the case when the movant is the defendant asserting an affirmative defense, `"the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the material specified in Rule 56(c), [Ala.] R. Civ. P. (`pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits')."' 769 So.2d at 909. `"The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial."' Id. In other words, `when the movant has the burden [of proof at trial], its own submissions in support of the motion must entitle it to judgment as a matter of law.' Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir.1998) (emphasis added). See also Equal Employment Opportunity Comm'n v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49 (1st Cir.2002); Rushing v. Kansas City Southern Ry., 185 F.3d 496 (5th Cir. 1999); Fontenot v. Upjohn Co., 780 F.2d 1190 (5th Cir.1986); Calderone v. United States, 799 F.2d 254 (6th Cir.1986)."
Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1195 (Ala.2002).

Analysis
On appeal, Buist argues that the defendants are subject to the ASA and the rules and regulations promulgated pursuant to it, because, he says, federal law does not exempt Time Domain's securities from the *294 operation of the ASA. The defendants argue that Buist confuses preemption with exemption, that they sufficiently supported their summary-judgment motion, and that Buist failed to present substantial evidence in opposition to the motion.
The ASA, Ala.Code 1975, § 8-6-1 et seq., as Buist argues, requires that sellers and sales of securities be registered with the state. The ASC, however, is empowered to exempt various transactions from the general requirement of registration in the ASA. The defendants have not argued that they are exempt under the rules promulgated by the ASC. Rather, they argue that they are exempt solely upon the basis of the Securities Act of 1933 ("the Securities Act").
Section 5 of the Securities Act, 15 U.S.C. § 77e, provides that before a security is sold through the use of either the mails or interstate commerce,[1] the security must be registered with the SEC. Sections 3 and 4 of the Securities Act, 15 U.S.C. § 77c and d, exempt from the registration requirement of § 5 certain securities and transactions. Of particular importance to this appeal is Section 4(2) of the Securities Act, which exempts from the registration requirement of § 5 any transaction "not involving any public offering." 15 U.S.C. § 77d(2).
In 1996, the Securities Act was amended by the National Securities Markets Improvement Act of 1996 ("the NSMIA"). Section 102(a) of the Capital Markets Efficiency Act of 1996, a part of the NSMIA, amended § 18 of the Securities Act to obviate the necessity of registering certain securities with both state and federal governments by providing that under certain conditions state laws requiring registration are preempted by the Securities Act. One such situation is when a security qualifies as a "covered security." 15 U.S.C. § 77r(a)(1). Section 18 defines a "covered security" as, among other things, a security involved in a "transaction that is exempt from registration ... pursuant to ... [SEC] rules or regulations issued under [§ 4(2) of the Securities Act]." 15 U.S.C. § 77r(b)(4)(D).
Section 4(2), in turn, therefore serves both to define a transaction that is "exempt" from federal registration requirements and, by extension of a transaction's status as exempt, to indicate when the Securities Act will preempt state securities law. In other words, under the NSMIA, state securities laws are preempted as to certain securities, some of which also happen to be exempt from federal registration requirements.
Regulation D, promulgated by the SEC, includes three exemptions from federal registration requirements: Rules 504, 505, and 506. Of these three, Rule 506, issued under § 4(2) of the Securities Act, defines what sort of offer and sale of securities by an issuer is, as § 4(2) requires, one "not involving any public offering." 17 C.F.R. § 230.506. Rule 506 specifies various conditions that must be satisfied before a transaction is "deemed" to be one "not involving any public offering." First among these conditions are those denominated "general conditions," consisting of "all terms and conditions of" Rules 501 and 502 of Regulation D. 17 C.F.R. § 230.506(b)(1). Rule 501 defines, often by resort to reference to various sections of the Securities Act or rules issued under it, eight terms used throughout Regulation D. 17 C.F.R. § 230.501. Rule 502 sets forth four conditions, with various subdivisions, applicable *295 to all offerings that relate to what constitutes an "offering," what information is to be supplied to offerees, how an offeror may solicit purchasers, and what limitations apply to resales of securities. 17 C.F.R. § 230.502. Many of the provisions refer, in turn, to other sections of the Securities Act or to regulations promulgated under it. 17 C.F.R. § 230.502. Assuming that all such "general conditions" are met, Rule 506 imposes two additional "specific conditions." First, no single offering, as defined in Rule 502(a), may involve more than 35 purchasers, as "purchaser" is defined in Rule 501(e). 17 C.F.R. § 230.506(b)(2)(i). Second, any purchaser must be either an "accredited investor" as defined by Rule 501(a), his purchaser representative must be so accredited, the purchaser must have some sophistication in investing, or the issuer must reasonably believe that the purchaser is so knowledgeable immediately before selling the security to the purchaser. 17 C.F.R. § 230.506(b)(2)(ii). If all of these conditions are met, the transaction "shall be deemed" to be one "not involving any public offering" pursuant to Rule 506(a) and thus exempt from federal registration.
In § 18 of the Securities Act, in the same subparagraph defining a covered security by reference to Rule 506, Congress has placed one qualification upon federal preemption of state law. Specifically, states are permitted to continue imposing "notice filing requirements" upon issuers of securities. 15 U.S.C. § 77r(b)(4)(D).
In the defendants' narrative summary of undisputed facts and memorandum of law in support of their motion for a partial summary judgment ("the defendants' narrative"), they argued that all shares of stock sold by Time Domain directly to Buist were sold "pursuant to a Form D filing under Rule 506 of Regulation D of [the Securities Act]." Consequently, the defendants argue, the sales constituted "covered securities," and the Securities Act thus preempted the registration requirements of the ASA. Because the registration requirements of the ASA form the basis of Buist's claims and yet were preempted, the defendants went on to argue, Buist had no viable cause of action under the ASA, and they were entitled to a summary judgment on Buist's claim alleging that they had violated the ASA.
The defendants submitted the following evidentiary materials with their motion and narrative: 1) a Form D filed with the ASC on May 29, 2001; 2) a letter from the ASC to Time Domain dated August 17, 2001; 3) a Form D filed with the ASC on December 2, 2002; and 4) a letter from the ASC to Time Domain dated January 23, 2003. The letters, the bodies of which include identical text, state, in pertinent part:
"The [ASC] staff has reviewed the implications of the [NSMIA]. The [NSMIA] ... allows the states to require notice filings in terms of requiring the issuer to file a Form D and to assess filing fees.
"... [The Form D filed by Time Domain] shall be considered a notice filing.

"Based on the foregoing statute changes and notice requirements, the materials submitted on behalf of [Time Domain] satisfy the current requirements of the [ASC]."
(Emphasis added.) The ASC's letters indicate that it receives Form D's as "notice filings," and there is no suggestion that the ASC evaluates, approves, or disapproves of the Form D's or that it assesses them in any way for compliance with Rule 506.
Buist argues that the defendants did not prove that their sales to him complied with the conditions and requirements of Regulation D. Further, he argues, only by proving that one meets those requirements can *296 a seller of securities prove it is entitled to the preemption afforded by § 18 of the Securities Act. The defendants, Buist argues, do not prove such preemption simply by proving that they filed Form D's.
On appeal, the defendants argue that proving preemption entails a much lower burden than proving exemption. The defendants bear the burden of proof on the affirmative defense of preemption. Triple E Transport, 732 So.2d at 292. Likewise, "[t]he burden of establishing an exemption is on the [party] who claims it." UBS Asset Mgmt. (N.Y.) Inc. v. Wood Gundy Corp., 914 F.Supp. 66, 68 (S.D.N.Y.1996) (citing SEC v. Ralston Purina Co., 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953)). The issue is how the party must prove this defense. As shown above, and contrary to the defendants' argument, under Rule 506 exemption and preemption are functionally equivalent. Specifically, under the rule, the defendants can demonstrate that the Securities Act preempts the ASA because the transactions in question are exempt from the registration requirements of the Securities Act. The remaining question is whether evidence indicating that all of the requirements of Rule 506 were satisfied is necessary to prove preemption.
In In re Cherokee Energy Co., CD-2003-02, Feb. 4, 2003 (vacated April 18, 2003, OV-2003-0002), a case before the ASC, a dealer had sold unregistered securities to Alabama residents. The ASC found that the dealer had violated Rule 502(c), which prohibits any form of general solicitation, such as "cold calling." See 17 C.F.R. § 230.502(c). Because of that violation, the ASC ordered Cherokee Energy and the other respondents to stop selling the securities, because the securities "fail[ed] to comply with the provisions relating to Rule 506[,] effectively voiding the federal exemption and in turn the `covered securities' status as afforded by NSMIA." The defendants argue that Cherokee Energy is distinguishable, because the parties in that case had no preexisting relationship, while Buist and Time Domain had a preexisting relationship with one another. Despite the distinction, however, the rationale of Cherokee Energy is that a failure to comply with a requirement of Rule 506 "voids" the exemption, thereby eliminating the possibility of preemption.
The defendants argue that Lillard v. Stockton, 267 F.Supp.2d 1081 (N.D.Okla. 2003), and Temple v. Gorman, 201 F.Supp.2d 1238 (S.D.Fla.2002), support their position. Both cases, they contend, stand for the proposition that the filing of a Form D, in and of itself, qualifies a sale of the securities involved as one sold pursuant to Rule 506, thus preempting state law.
In Temple, the defendants sold securities to plaintiffs in a private placement. The "Subscription Agreement and Purchaser Questionnaire" acknowledged that the securities had not been registered, and the transaction purported to be exempt from registration pursuant to Rule 506. Temple, 201 F.Supp.2d at 1240. The defendants filed a Form D with the SEC. The plaintiffs alleged that the defendants violated Florida securities laws and argued that the sale was not exempt under Rule 506 because it did not meet the requirements of Rule 506. Temple, 201 F.Supp.2d at 1243. Emphasizing the importance of Congress's stated purpose in passing particular legislation, the court noted that Congress intended for securities transactions to be preempted "`if offered or sold pursuant to a Commission rule or regulation adopted under such section 4(2).'" Temple, 201 F.Supp.2d at 1243 (quoting H.R.Rep. No. 104-622, at 32 (1996)). The court's analysis and holding consisted simply of the paragraph:

*297 "Here, Plaintiffs have alleged that Defendants' private placement of securities `purported to be exempt from registration pursuant to Rule 506 of Regulation D promulgated by the SEC.' ... Construing this allegation in Plaintiffs' favor, the Court finds that the securities in this case were `offered or sold pursuant to a Commission rule or regulation adopted under section 4(2).' Regardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to Plaintiffs are federal `covered securities' because they were sold pursuant to those rules. As a result, Fla. Stat. § 517.07 does not require registration of such securities."
Temple, 201 F.Supp.2d at 1243-44. We note the absence of any citation to caselaw or other supporting authority. The court concluded that "[w]here a Form D was filed with the SEC for a transaction that purported to merit an exemption . . ., Florida law could not require duplicative registration." Temple, 201 F.Supp.2d at 1244.
In Lillard, the court adopted the report and recommendations filed by the magistrate judge first assigned to the case. 267 F.Supp.2d at 1088. In a fact situation similar in many material aspects to the one in Temple, the plaintiffs alleged that the defendants had violated federal and Oklahoma securities laws. Lillard, 267 F.Supp.2d at 1115. The defendants, citing Temple, argued that the plaintiffs' state claims were preempted, because the securities had been sold pursuant to Rule 506. Lillard, 267 F.Supp.2d at 1116. The opinion does not indicate that a Form D had been filed. The magistrate quoted the statement from Temple that a sale of securities pursuant to the rules of Regulation D trumps actual compliance with the requirements of Regulation D or Rule 506. Lillard, 267 F.Supp.2d at 1116. He recommended, based solely on Temple, and the district court subsequently held, that the plaintiffs' state-law claims were indeed preempted by federal law. Lillard, 267 F.Supp.2d at 1116.
The issues presented in Temple and Lillard are similar to the issue in this case. Even considering these cases directly on point, however, they are United States district court cases and can serve only as persuasive authority. See Glass v. Birmingham So. R.R., 905 So.2d 789, 794 (Ala.2004)(stating that "[l]egal principles and holdings from . . . federal courts [inferior to the United States Supreme Court] have no controlling effect here, although they can serve as persuasive authority"). Moreover, Temple represents simply an ipse dixit without any accompanying analysis; Lillard, in turn, simply relies upon Temple.
The defendants' motion for a partial summary judgment was filed on March 29, 2004. The Form D's submitted in support of the motion were filed with the ASC on May 29, 2001, and December 2, 2002. The vast majority of the securities described in each Form D had not been sold before the filing of the Form D. Consequently, in each Form D, Time Domain promised a future course of conduct consistent with the requirements for an exempt offering. For example, in each Form D, Time Domain stated that it did not intend to sell to "non-accredited investors." By relying upon the Form D's as the basis for its claim of exemption, Time Domain necessarily failed to submit any evidence of its compliance with the promises set forth in the forms.
Even if the filing of a Form D is sufficient to obtain the exemption necessary for a finding of federal preemption, proof that an exemption was obtained is no evidence that the exemption exists at any *298 later date, because, as discussed in Cherokee Energy, a failure to comply with a requirement of Rule 506 "voids" the exemption, thereby eliminating the possibility of preemption. In other words, the exempt status of the sale of securities that deviates from any of the material commitments made in its Form D filing is repealed retroactively. Therefore, because Time Domain submitted no evidence indicating that its sales of securities were actually made in conformity with Regulation D, it did not make a prima facie showing that there was no genuine issue of material fact as to its exemption under Rule 506. Without some evidence that the sale of securities as of the date of the affidavit was in conformity with the conditions indispensable to the exemption, the burden never shifted to Buist to demonstrate a genuine issue of material fact sufficient to avoid a summary judgment. Therefore, the partial summary judgment for the defendants is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS, J., concurs specially.
NABERS, C.J., and SEE, HARWOOD, and STUART, JJ., dissent.
LYONS, Justice (concurring specially).
I concur fully with the main opinion.
The principle that I distill from today's holding is that, on a motion for a summary judgment, when the movant's conduct consistent with an established norm is relevant, the movant does not shift the burden of production to the nonmovant by relying exclusively on evidence of the movant's previous promise to conform its behavior to the established norm. Evidence of conduct in conformity with the promise, not merely evidence of the promise to conduct one's self in a particular manner in the future, is necessary to shift the burden to the nonmovant. Because the movant has not offered any evidence of such conduct, the summary judgment must be reversed.
HARWOOD, Justice (dissenting).
I respectfully dissent.
In the defendants' narrative summary of undisputed facts and memorandum of law in support of their motion for a partial summary judgment, they argued to the trial court that all shares of stock sold directly to Buist by Time Domain were sold "pursuant to a Form D filing under Rule 506 of Regulation D of [the Securities Act]."
Although the Form D's the defendants submitted with their motion are the particular copies filed with the Alabama Securities Commission ("ASC"), Buist concedes to this Court that the forms were also filed with the Securities and Exchange Commission ("SEC"). The "Federal Signature" portion of the Form D advised those signing on behalf of Time Domain that any "intentional misstatements or omissions of fact" would constitute federal criminal violations under 18 U.S.C. § 1001, which provides for fines and/or up to five years' imprisonment for such intentional misstatements or omissions.
Buist argues that the defendants did not prove by the content of the filed Form D's that their sales to him complied with each of the conditions and requirements of Regulation D; he argues that only by proving that the seller has satisfied each of those requirements can a seller of securities prove its entitlement to the preemption afforded by § 18 of the Securities Act.
Buist frames the issue as follows:

*299 "The point of disagreement [between the parties] lies with what is necessary to establish `covered securities' status so that state registration is pre-empted. Dr. Buist rejects the Respondents' simplistic approach that all that is required to gain `covered securities' status and trigger the federal preemption under Section 18 of the 1933 Act is the filing of the Form D with both the SEC and the Alabama Commission.
"Dr. Buist believe that status as a [sic] `covered securities' under Section 19(b)(4)(D) is only obtained by proof that the offering meets all the requirements and conditions of Rule 506."
(Buist's principal brief, p. 22-23.)
Because this matter comes to us as an appeal from a summary judgment where the movant provided evidentiary support for its motion but the opponent submitted only legal argument by way of response, I refine Buist's statement of the issue to cast it in the proper procedural context: whether Time Domain's proof of the filing of the Form D with both the SEC and the ASC was sufficient, given the content of the Form D, to make a prima facie showing that there was no genuine issue of material fact, thereby shifting the burden to Buist, the nonmovant, to present substantial evidence creating such an issue? In that regard, we should be mindful of exactly what the parties argued to the trial court in supporting and in opposing the summary-judgment motion.
The defendants argued to the trial court that Lillard v. Stockton, 267 F.Supp.2d 1081 (N.D.Okla.2003), and Temple v. Gorman, 201 F.Supp.2d 1238 (S.D.Fla.2002), supported their position. The main opinion notes, but discounts the probativeness of, those two decisions. Nonetheless, Buist acknowledged to the trial court that those were the only two cases that had "directly considered the issue," and conceded that "[a]t the moment, the defendants have the precedential advantage."
Buist argued in his response to the motion for a summary judgment that
"it appears clear that the sales of Time Domain securities can not qualify for a Rule 506 exemption. All the various sales will most likely be integrated into a single offering. See Rule 502 and SEC v. Murphy, 626 F.2d 633 (9th Cir. 1980). If this is done, a number of disqualifications become apparent. For example, the number of persons sold to and the manner of such sales presents [sic] a major question of whether the offering is not a public offering rather than a private placement. Further, there is the issue of whether there are sales to only thirty-five unaccredited investors and whether all these accredited investors are sophisticated. Finally, there is a major issue of whether the investors were furnished the information required under Rule 502."
Buist did not elsewhere in his response identify what "various sales" he had reference to. In his complaint as last amended, he asserted that he had first purchased shares in Time Domain directly from other shareholders on September 28 and October 13, 2000, respectively. Thereafter, he purchased shares directly from Time Domain itself for the first time on July 11, 2001, followed by additional purchases directly from Time Domain on October 5, 2001, and January 24, 2002. It is only these shareholder sales and Time Domain sales of stock that Buist references in Count I of his complaint, the subject of the partial summary judgment.
In a footnote to his principal brief to this Court, Buist clarifies his point when he speculates on the possibility that "four serious questions yet unresolved" could demonstrate "defects [that] should result in the loss of the federal pre-emption." Specifically, *300 Buist argues first that the fact that he first bought Time Domain securities from other shareholders "raises the question" whether those sales and subsequent ones should be "integrated" with the direct sales to Buist by Time Domain for the purpose of calculating the true scope of the Regulation D offering. He then goes on (1) to assert that "there is a question" whether the Form D was filed with the ASC within 15 days of the first sale in Alabama; (2) to postulate that subsequent sales by Time Domain might have obligated it to file a revised Form D; and (3) to argue that if other offerings by Time Domain were to be integrated, there would be an issue whether the two Form D's submitted by Time Domain in support of its motion for a summary judgment were timely filed or "covered the entire block of securities actually sold thereunder." (Buist's principal brief, p. 21 n. 1.) None of these three possibilities were raised by Buist before the trial court in any form, and he presently proposes them simply as conjectured possibilities.
"An appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record timely presenting that argument to the trial court for its consideration in the proceedings on the motion for summary judgment. Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000)."
Ex parte Smith, 901 So.2d 691, 695 (Ala. 2004).
Buist also argues on appeal that "there is no evidence that all investors were accredited investors as defined in Rule 501(a) ... [n]or is there any evidence that there were no more than 35 unaccredited investors who were sophisticated. Rule 506(b)(2)(I) and Rule 501(e)." (Buist's principal brief, p. 29.) Again Buist never raised these possibilities before the trial court; consequently, they cannot be considered as a basis for reversing the summary judgment. Ex parte Smith, supra. Moreover, they are directly contradicted by the contents of the Form D's. Both Form D's declare themselves to represent "Notice of Sale of Securities Pursuant to Regulation D, Section 4(6) . . ." filed under Rule 506 and contain the unequivocal statement that Time Domain had neither sold, nor would sell, to nonaccredited investors. Buist speculates in his principal brief that because certain Time Domain stockholders personally sold him some of their stock "prior to the subsequent direct sales by Time Domain claimed as exempt under rule 506," those sales and Time Domain's direct sales would "most likely be integrated into a single offering" and, if that integration were to be recognized, disqualifications to exemption might be shown, by way of sales in excess of the number permitted and sales constituting a public offering rather than a private placement. Lastly, he supposes that there might arise "a major issue of whether the investors were furnished the information required under Rule 502." (Buist's principal brief, p. 30.) Buist made none of these arguments to the trial court, however. Therefore, they cannot be considered as a basis for reversing a summary judgment. Ex parte Smith, supra. Furthermore, although Rule 502(a) stipulates that "[a]ll sales that are part of the same regulation D offering must meet all of the terms and conditions of regulation D," Buist points to no evidence suggesting that the sales of stock by stockholders and the separate sales of stock by Time Domain should be considered part of the same "integrated" Regulation D offering. Rule 502(a) provides in part that "[o]ffers and sales that are made more than six months before the start of a regulation D offering ... will not be considered part of that regulation D *301 offering" so long as during the six-month period the issuer does not offer or sell securities of the same or a similar class. 17 C.F.R. § 230.502(a). Buist's purchases of Time Domain stock from other shareholders preceded the May 29, 2001, filing of the first Form D by more than six months. Buist does not argue that any disqualifying offers or sales fell within the six-month period.
Although Rule 502(c) forbids an issuer of securities from offering or selling the securities "by any form of general solicitation or general advertising," there is no evidence in the record indicating that Time Domain offered or sold any securities in violation of the restriction. The "information requirements" of Rule 502(b) are triggered only when "the issuer sells securities under [Rule 506] to any purchaser that is not an accredited investor ... [t]he issuer is not required to furnish the specified information to purchasers when it sells securities ... to any accredited investor." As noted, the Form D's filed by Time Domain declared that sales were to be to only accredited investors.
In his reply brief to this Court, Buist argues variations on these themes and additionally questions "whether Dr. Buist's securities were covered by any of the Form D's," stating that he would need to conduct discovery on the issue whether "the tender forms cover the blocks of securities from which Dr. Buist's came." This possibility was never raised before the trial court and before this Court is raised for the first time in the reply brief.
"We note `the well-established principle of appellate review that we will not consider an issue not raised in an appellant's initial brief, but raised only in its reply brief.' Brown v. St. Vincent's Hosp., 899 So.2d 227, 234 (Ala.2004). . . .
"Even if we were to ignore the fact that the only legal authority cited by [appellants] in support of their argument first appears in their reply brief, the record reveals that the [appellants] never presented this argument to the trial court.
"`. . . .'
"`. . . We cannot put a trial court in error for failure to rule on a matter which, according to the record, was not presented to, nor decided by him . . . .' Defore v. Bourjois, Inc., 268 Ala. 228, 230, 105 So.2d 846, 848 (1958)."
Kyser v. Harrison, 908 So.2d 914, 917-18 (Ala.2005).
Moreover, given that Time Domain explicitly declared at more than one point in each of the two Form D's at issue that the underlying offering of securities would not involve sales to nonaccredited investors and that the Time Domain officials signing the form were on notice that intentional misstatements or omissions of fact could expose them to significant federal criminal penalties, proof of the filing of the form with the SEC and the ASC makes a prima facie showing, for purposes of the summary-judgment motion, that there is no genuine issue as to that material fact. Thus, as to it, the burden then shifted to Buist to present substantial evidence creating such an issue. He did not do so; rather, before the trial court he simply took the position in his response to the summary-judgment motion that the defendants had to offer independent and direct proof of "each and every element of the exemption." The only possible area of noncompliance with Rule 506 that Buist suggested to the trial judge was that if "various sales" were integrated with the Form D offerings, they could infect the overall transaction so as to disqualify it from exemption. Buist did not shore up this speculation with any evidentiary support; he simply took the position that the possibility of such fact issues made consideration *302 of Time Domain's summary-judgment motion premature.
I have carefully considered the "general conditions" of Rule 501 and 502 and the "specific conditions" of Rule 506, all of which would have application to an offering made solely to accredited investors, and I conclude that the Form D filings for the transactions in question fully address and satisfy those applicable conditions, with the exception of the prohibition of Rule 502(c) against any form of general solicitation or general advertising and the prohibition of Rule 502(d) on resale. All Buist argued to the trial court relevant to either of those conditions, however, was that if sales other than those contemplated by the Form D's were to be integrated with them, so as to create a larger single offering, the increase in the number of persons sold to and the manner of such sales could present a question as to whether the offering was a public offering rather than a private placement. Such a two-step progression of speculation did not satisfy Buist's burden under Rule 56(c)(1), Ala. R. Civ. P., whereby "[i]f the opposing party contends that material facts are in dispute, that party shall file and serve a statement in opposition supported in the same manner as is provided herein for a summary of undisputed material facts," i.e., "supported by specific references to pleadings, portions of discovery materials, or affidavits and may include citations to legal authority."
Buist argued to the trial court and he argues to this Court that a Rule 506 exemption can be "lost" and "destroyed" by subsequent activity, thereby causing a loss of the federal preemption. Consistent with this concept is the quotation Buist offers from the treatise authored by one of his appellate counsel: Joseph C. Long, Blue Sky Law. Citing "Long, p. 5-17," Buist quotes from that treatise on page 43 of his principal brief as follows:
"`In the case of Rule 506 offerings, this language would make clear that the securities are covered securities even though the 506 offering had not yet been completed, and[,] therefor[e], could be lost entirely by subsequent action of the issuer. In such case, the securities are covered, if the offering is successfully completed. The securities, however, are not covered securities, if the exemption is later lost. Thus, an offering of non-exempt securities within six months of a Regulation D offering might be integrated with that offering causing the loss of the exemption for the first offering.'"
(Emphasis in original; footnote omitted.)
As noted, Buist did not argue to the trial court that Time Domain had in fact engaged in any general solicitation or general advertising in connection with the offerings that embraced the sales to Buist, and he did not argue that any resales of those securities had occurred contrary to the limitations imposed by Rule 502(d); Buist offered no evidence to the trial court indicating that any such disqualifying activity had taken place. Rather, he only speculated that if other sales could be integrated with those covered by the two Form D's, so as to constitute an enlarged Regulation D offering, it might turn out that reasons to disqualify the exemption were present. Such speculation, premised on mere possibilities, falls far short of satisfying Buist's burden of showing by substantial evidence that material facts were in dispute on any of those issues. By filing the Form D's with the SEC and the ASC and thus giving to those agencies "notice of sale of securities pursuant to Regulation D," specifically under Rule 506, Time Domain asserted, under the pain of federal criminal sanctions, its compliance with the Rule 506 *303 limitations on the manner of offering securities and limitations on their resale.
The main opinion takes the position that "because Time Domain submitted no evidence indicating that its sales of securities were actually made in conformity with Regulation D, it did not make a prima facie showing that there was no genuine issue of material fact as to its exemption under Rule 506." 926 So.2d at 298. I disagree. Time Domain sufficiently supported its motion for a summary judgment so as to make a prima facie showing that the transactions forming the offering covered by each Form D were exempt from registration "pursuant to" Rule 506. Buist did not sustain the burden thereby shifted to him to present substantial evidence creating some genuine issue of fact material as to the issue of exemption. Consequently, I would affirm.
NABERS, C.J., and SEE, J., concur.
NOTES
[1] The Securities Act can thus reach intrastate activity by virtue of Congress's power over both interstate commerce and the United States postal system. U.S. Const., art. I, § 8, cls. 3 & 7.